IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

JEFFREY CLAYTON KANDIES, )
                                    )
                 Petitioner,        )
                                    )
        v.                          )    1:99CV00764
                                    )
ROBY C. LEE, Warden,                )
Central Prison                      )
Raleigh, North Carolina,            )
                                    )
                 Respondent.        )

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Petitioner seeks relief in this Court pursuant to 28 U.S.C.
§ 2254. He was convicted by the State of North Carolina for first-
degree murder and the first-degree rape of Natalie Lynn Osborne,
who was the four-year-old daughter of petitioner's then, fiancee.
The mother, Patricia Craven, also has two sons, the youngest of
whom is evidently petitioner's. Craven and petitioner had separate
residences approximately ten miles away from each other.
Petitioner lived in Randleman, North Carolina, and Craven stayed at
an apartment in Asheboro, North Carolina.

The facts in this case were set out by the North Carolina
Supreme Court in its decision in State v. Kandies, 342 N.C. 419,
430-433, 467 S.E.2d 67, cert. denied, 519 U.S. 894, 117 S.Ct. 237,
136 L.Ed.2d 167 (1996). To summarize, petitioner was with Natalie
on Easter Monday, April 20, 1992. Both Craven and petitioner were
with Natalie until some time between 4:00 and 4:30 p.m. Then
petitioner left to go to the store and did not return until 7:30

p.m. Natalie could not be found and petitioner reported her missing. An extensive search was conducted.

Meanwhile, and earlier that evening, petitioner was in a convenience store and his hand was beginning to swell. He claimed he got into a fight with his brother. Later that evening, and close to midnight, petitioner returned to the store to see if the clerk had seen Natalie. At that time, the clerk observed black garbage bags in the back of petitioner's truck.

The next day, the police thought that perhaps Craven and petitioner had hidden Natalie at petitioner's Randleman residence in order to deny the father access. A search of the house did not locate Natalie. On Wednesday, April 22, 1992, petitioner was questioned at the police station. He was taken to Craven's residence around 1:00 a.m. When he arrived, Craven asked petitioner if he knew what had happened to Natalie and petitioner volunteered that he had hit Natalie with the truck on Easter Monday and panicked because he had been drinking. Therefore, he claimed to have taken Natalie to his house to clean her up. He stated that Natalie did not look right, so he concealed her and her clothes in a garbage bag which was put into a bedroom closet.

As a result of this story, petitioner returned to the police station and gave a more detailed statement. His residence was voluntarily searched and Natalie's body was found buried under a pile of clothes and carpet pieces in a bedroom closet. Natalie's bloody playsuit and bloody pair of panties were both turned inside out and found in the bag. A forensic pathologist testified to

-2-

blunt force injuries on the head, neck, skull, back and both sides.
These bruises were small and rounded and had a distribution in the
shape suggestive of an adult hand. Natalie's pelvic region was
injured with bruising on both sides of the vagina which was full of
blood. The pathologist opined that the injuries were indicative of
sexual assault and had occurred at or about the time of death.

That evening, which would have been Thursday, April 23, 1992,
and after the results of the autopsy were revealed, a police
officer interrogated petitioner and mentioned the possibility of
sexual assault. Petitioner's response was that he had already told
Craven that the officers would say that he had done something like
that to Natalie. Thereafter, petitioner denied sexually abusing
Natalie. However, he admitted that he took Natalie to his house,
put her into the bathtub, and took off her clothing in order to see
how badly she was injured. Petitioner then stated he could not
handle the situation and may have strangled Natalie. Blood was
found at numerous places in petitioner's residence and in his
truck.

Understandably, petitioner presented no evidence during the
guilt-innocent phase of the trial. The jury found petitioner
guilty of first-degree murder on both a felony murder rule and
premeditation and deliberation premise, and also found him guilty
of first-degree rape. During the sentencing phase, he presented
evidence from a clinical psychologist as an expert in substance
abuse treatment who spoke about petitioner's alleged use of alcohol
and marijuana on a daily basis for several years. The psychologist

-3-

opined that petitioner had severe alcohol dependence on the day of
the offense and was suffering from acute intoxication which may
have affected his judgment and ability to control his emotions.
That doctor also opined that petitioner had a mental disorder and
did not appreciate the criminality of his actions. The jury found
aggravating circumstances on the grounds that petitioner committed
the act during the commission of first-degree rape and further,
that the murder was especially heinous, atrocious or cruel. If
further found three of the five proposed statutory mitigating
circumstances and eighteen of the twenty-eight non-statutory
mitigating circumstances submitted. Accordingly, it unanimously
recommended a sentence of death, which the trial court imposed.

Petitioner appealed his conviction which was affirmed by the
North Carolina Supreme Court in State v. Kandies, supra.
Petitioner then filed a motion for appropriate relief in state
court in September 1997. There, he contended that (1) his Sixth
Amendment right to effective assistance of counsel was denied
because counsel was not qualified to try a capital case, (2)
counsel was ineffective for failing to conduct an adequate
investigation to uncover evidence that petitioner had been sexually
molested as a young child and to offer such evidence in mitigation,
and (3) the evidence that petitioner committed rape was
insufficient. The superior court denied relief. (Immediately
prior to the court's decision, counsel for petitioner had requested
to be relieved of representation, which was granted.) In the
Petition for Certiorari to the North Carolina Supreme Court,

-4-

petitioner raised the additional issue that the superior court should not have decided the motion without affording a new attorney the right to submit additional briefing and further, that the superior court erred by not affording petitioner an evidentiary hearing.

The North Carolina Supreme Court remanded the matter back to the superior court for reconsideration of petitioner's motion for appropriate relief in light of that court's opinion in State v. McHone, 348 N.C. 254, 499 S.E.2d 761 (1998). In McHone, the court found, after reviewing N.C.G.S. § 15A-1420(c), that a state post-conviction court must make written conclusions of law and reasons before denying a post-conviction motion alleging a violation of constitutional rights. McHone further found that if a post-conviction motion merely alleges questions of law or if the supporting information to the motion would not affect the legal conclusion, then the motion can be denied without hearing, even if facts are in dispute. In petitioner's case, the court rejected a contention that a state defendant is entitled to a post-conviction evidentiary hearing merely because he asserts there is a conflict of facts relating to constitutional issues. However, it required the state post-conviction court to specifically find whether an evidentiary hearing is required to resolve facts or not.[1]

---

[1]In McHone, the North Carolina Supreme Court found that the post-conviction court did not make the required finding concerning the need for an evidentiary hearing. There, the disputed issue of fact was whether the State had submitted a proposed order to the trial court, but had not provided the defendant or his counsel with a copy. If so, this would have been an improper ex parte contact.

-5-

Thereafter, and on November 30, 1998, petitioner filed an amended motion for appropriate relief which attempted to raise additional arguments, as follows: (1) counsel was ineffective for failing to offer evidence that someone else other than petitioner had sexually abused Natalie, (2) counsel was ineffective for failing to request the trial court to submit additional non-statutory mitigating factors, and (3) that counsel was ineffective for failing to request that the jury be instructed in accordance with the law of voluntary intoxication.

On April 29, 1999, the state post-conviction court determined that there was no need to conduct an evidentiary hearing because there was no evidentiary dispute about a "dispositive fact" which would necessitate a hearing. It found that merely because there were factual disputes, this was not sufficient to require a state court hearing. It also denied petitioner's amended motion for appropriate relief, finding that the amendment was not authorized by the order of remand from the North Carolina Supreme Court and was an attempt to raise additional allegations which should have been raised in petitioner's original motion for appropriate relief filed May 8, 1997. Therefore, it refused to consider the additional grounds for relief, and it additionally found them to be procedurally barred in accordance with N.C.G.S. § 15A-1419. Further relief was denied.

-6-

In this Court, petitioner raises fourteen grounds for relief.[2] Before turning to them, it is appropriate to point out the standard of review. First, this Court is required to give deference to state court adjudications as required by 28 U.S.C. § 2254(d). A federal court reviews the state court's adjudication only to determine whether it is contrary to established federal law or whether it involved an unreasonable application of federal law. Fisher v. Lee, 215 F.3d 438, 447 (4th Cir. 2000). A decision is contrary to federal law if the state court comes to a conclusion opposite that reached by the Supreme Court or if the state court decides a case differently then the Supreme Court has when the facts are materially indistinguishable. A state court decision is an unreasonable application when the state court has identified the correct governing legal principle but applies that principle unreasonably to the facts of the case in front of it. Also, with respect to state court factual findings, there is a presumption of correctness that can be rebutted only by clear and convincing evidence. Evans v. Smith, 220 F.3d 306, 311-312 (4th Cir. 2000).

Petitioner's first claim is that the state court violated his rights to "fundamental fairness" by addressing his motion for appropriate relief despite concluding that he was represented by counsel with a conflict of interest. For facts, petitioner states that on February 9, 1998, his post-conviction counsel filed a motion to withdraw, alleging a clear and unavoidable conflict of

---

[2]Petitioner confuses the situation by failing to key the claims to the brief which argues eighteen "claims."

-7-

interest. Petitioner states that the state court allowed the motion to withdraw but then failed to appoint conflict free counsel in a timely manner and instead, merely ruled upon the motion for appropriate relief filed by petitioner's counsel.

Petitioner cites the Supreme Court's decision in <u>Ohio Adult Parole Authority v. Woodard</u>, 523 U.S. 272, 118 S.Ct. 1244, 140 L.Ed.2d 387 (1998), for authority for the proposition that the same due process rights which pertain to the trial and direct appeal, also apply to post-conviction proceedings. However, that case involved clemency proceedings and not post-conviction proceedings. More importantly, the Supreme Court in <u>Woodard</u> did not find any due process right with respect to clemency proceedings. Indeed, the Supreme Court went on to note that there is no continuum of due process rights occurring from trial through post-conviction proceedings. <u>Id</u>. 523 U.S. at 284. Petitioner, apparently seeks to rely on fragments from the concurring opinions to establish a new rule of law. <u>Woodard</u> does not establish such a right. Rather, the established law is that claims of error occurring in state post-conviction proceedings cannot serve as a basis for federal habeas corpus relief. <u>Bryant v. State of Maryland</u>, 848 F.2d 492 (4th Cir. 1988); <u>Kenley v. Bowersox</u>, 228 F.3d 934 (8th Cir. 2000). The relevant Supreme Court authority is <u>Pennsylvania v. Finley</u>, 481 U.S. 551, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987), which found there was no Sixth Amendment or Fourteenth Amendment Due Process or Equal Protection right to counsel in post-conviction proceedings, and even if state law allows for appointed counsel, the full panoply of

-8-

due process rights do not apply to post-conviction proceedings. See Murray v. Giarratano, 492 U.S. 1, 109 S.Ct. 2765, 106 L.Ed.2d 1 (1989)(no constitutional right to counsel for capital post-conviction proceedings).

In addition, even if there were such a due process right to counsel and conflict free counsel in a post-conviction proceeding, petitioner fails to show that he, in fact, suffered an actual injury because of a genuine conflict of interest. A review of the record before the superior court at that time indicates that by a February 3, 1998 letter to the court, counsel expressed concern because petitioner's mother was making allegations that counsel conspired with the State against petitioner and filed lawsuits against the attorneys. Counsel labeled the allegations as farfetched, but seemed to think that these created a conflict of interest. Petitioner's mother was apparently attempting to act as his attorney and attempted to get a power of attorney from him. Counsel met with petitioner, who apparently adopted the mother's filings and stated that he no longer wished counsel to represent him. The state post-conviction court then entered an order denying post-conviction relief and at the same time, entered an order relieving counsel from further representation. The order relieving counsel from further representation was expressly based on the fact that petitioner's mother had attempted on two occasions to bring civil actions against the attorneys. There was no finding of any actual conflict of interest. Instead, as respondent argues, it appears that petitioner and his mother were attempting to disrupt

-9-

the court process by their antics and that the state court simply ruled on the petition and then relieved counsel from further representation. There was, in fact, no finding that there was any conflict of interest and it appears that the state court simply decided to give petitioner new counsel for further proceedings in the court. Therefore, petitioner's first claim for relief should be dismissed for both failing to state a justiciable claim and also for being without merit.

The second claim makes the allegation that the State violated petitioner's right to fundamental fairness when it denied his motion for appropriate relief without an evidentiary hearing. The contention appears to be that the state court violated its own law and procedures by the ruling and that this, in turn, violated petitioner's federal due process rights. For facts, petitioner states that the petition raised claims which would have entitled him to relief if resolved in his favor. Again, this type of issue fails to state a claim for federal relief as noted earlier. Petitioner is apparently attempting to again base his challenge on purported errors arising in the state post-conviction proceedings, which he cannot do.

In his petition, petitioner fails to specify which issues of fact required an evidentiary hearing. In his brief, petitioner claims that he should have been given a chance to present evidence that trial counsel was ineffective for failing to have discovered that he had been sexually molested as a child. Petitioner apparently states that in accordance with State v. McHone, supra,

-10-

the superior court was required to hold an evidentiary hearing. To the extent petitioner argues that the state failed to follow its own rules, that argument is not a viable federal post-conviction claim. This claim is premised on an interpretation of North Carolina law and, therefore, it is not cognizable in federal habeas corpus review. <u>Wright v. Angelone</u>, 151 F.3d 151, 157 (4th Cir. 1998). Furthermore, there is not a credible showing that the state court misapplied state law. The state court found that even though there may have been factual disputes, they need not be resolved in order to decide the issue. <u>See</u> <u>McHone</u>, <u>supra</u>; and, <u>see</u>, <u>e.g.</u>, <u>Thomas v. Taylor</u>, 170 F.3d 466 (4th Cir.), <u>cert</u>. <u>denied</u>, 527 U.S. 1016, 119 S.Ct. 2361, 144 L.Ed.2d 254 (1999). The state court simply found no need for a hearing. Therefore, even if petitioner had a constitutional right in the abstract to a hearing under North Carolina law, he fails to show that his federal constitutional rights were violated or that under the facts of his case, the state misapplied state law.

The third claim for relief alleges that petitioner was denied fundamental fairness under the Due Process Clause when the state court summarily dismissed his amended motion for appropriate relief. This claim, again, appears to be based on his argument that the Due Process Clause of the United States Constitution requires federal courts to enforce state rules in post-conviction relief proceedings. Petitioner wants this Court to rule that N.C.G.S. § 15A-1415(g) requires the state court to allow a defendant to file as many amendments to a motion for appropriate

-11-

relief prior to the entry of an order. Petitioner also apparently argues that this is a requirement of the North Carolina Supreme Court by virtue of its decision in State v. McHone, supra.

Again, petitioner fails to show that such a federal constitutional right exists. Second, even if petitioner had a right in federal habeas corpus to have a federal court interpret and enforce state rules and procedures, there is nothing in the state statute or state court decision which would require the result contended by petitioner. The fact that the state courts dismissed petitioner's request for relief would indicate that, in any event, petitioner is incorrect in his purported interpretations of state law. In all events, he is not entitled to federal habeas corpus relief on this issue.

Petitioner's fourth ground for relief alleges that he was denied his right to effective assistance of counsel. For facts, he states that trial counsel failed to investigate petitioner's childhood sexual abuse and to present that fact in mitigation. He further states that both trial counsel and direct appeal counsel failed to offer evidence that someone else sexually abused the victim, that counsel failed to request additional mitigating factors for the jury instruction, and did not request that the jury be instructed on voluntary intoxication. Finally, he contends counsel erred in abandoning a claim that his statement to police should have been suppressed.

These claims were raised in petitioner's amended post-conviction relief petition filed after the case was remanded by the

-12-

North Carolina Supreme Court. The superior court refused to permit the amendment. It stated that the case was remanded by the North Carolina Supreme Court for a very limited purpose to review the Court's prior decision in light of <u>State v. McHone</u>, <u>supra</u>. Consequently, the Court treated the amended motion as a second motion for appropriate relief which was barred by N.C.G.S. § 15A-1419. This is an independent and adequate state ground for finding that a claim has been procedurally defaulted. <u>See</u> <u>Fisher v. Lee</u>, 215 F.3d at 456. The State, in fact, raises procedural bar contained in N.C.G.S. § 15A-1419(a)(1)&(3). Therefore, the claim should be denied for being defaulted. Respondent also addresses the merits and indicates that the attorney cannot be blamed when neither petitioner, his mother, nor the clinical psychologist ever informed the attorney of his purportedly being abused. And, it should be noted that petitioner himself, in his brief at p. 20, fails to even present a vague argument as to why the attorney should be responsible for discovering matters of which petitioner was well aware, and could not be discovered by a trained psychologist.

Respondent further argues that the contention that counsel erred by not offering evidence that someone other than petitioner sexually assaulted Natalie is wholly without merit. The Court agrees. Petitioner does address this issue in his brief. However the evidence which would have been offered merely consists of evidence arising two years prior to the incident, wherein there is indication that Natalie's father may have had sexual contact with

-13-

her. However, this argument fails to recognize the fact that the pathologist in this case found that the sexual contact came at the time of Natalie's death, which would rule out the father, inasmuch as Natalie was with petitioner <u>at</u> <u>all</u> <u>relevant</u> <u>times</u> prior to and during the time of her death.

The next matter under issue number four is the procedurally barred assertion that counsel failed to request additional mitigating factors for the jury's consideration. One factor would be testimony from a Ms. Dempsey that Natalie considered petitioner to be a father figure. The second bit of evidence would be evidence from a Peggy McBride, who did not know petitioner well, but who would have made the gratuitous comment that she did not think that petitioner was capable of committing the act which he did. Petitioner also claims that counsel erred by not requesting petitioner's military service be submitted as a non-statutory mitigating factor. (However, as petitioner admits, his military service record also indicated misdemeanor arrests.) None of this constituted error.

An ineffective assistance of counsel claim is evaluated by using a two-part test:

> In order to establish an ineffective assistance of counsel claim . . . [a petitioner is] required to establish that his "counsel's representation fell below an objective standard of reasonableness," measured by the "prevailing professional norms," [citing <u>Strickland v. Washington</u>, 466 U.S. 668, 688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)], and "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," <u>id</u>. at 694, 104 S.Ct. 2052. "Unless a defendant makes both showings, it cannot be said that the conviction or death sentence

-14-

resulted from a breakdown in the adversary process that
renders the result unreliable." Id. at 687, 104 S.Ct.
2052.

In determining whether counsel's performance was
deficient, "[i]t is all too tempting for a defendant to
second guess counsel's assistance after conviction or
adverse sentence, and it is all too easy for a court,
examining counsel's defense after it has proved
unsuccessful, to conclude that a particular act or
omission of counsel was unreasonable." Id. at 689, 104
S.Ct. 2052. Hence, "court[s] must indulge a strong
presumption that counsel's conduct falls within the wide
range of reasonable professional assistance . . . [and]
that, under the circumstances, the challenged action
might be considered sound trial strategy." Id. (internal
quotation marks omitted).

Similarly, in evaluating whether the defendant has
shown actual prejudice from any such deficient
performance, it is insufficient for the defendant "to
show that the errors had some conceivable effect on the
outcome of the proceeding," because "[v]irtually every
act or omission of counsel would meet that test." Id. at
693, 104 S.Ct. 2052. Rather, a "reasonable probability"
that the result would have been different requires "a
probability sufficient to undermine confidence in the
outcome." Id. at 694, 104 S.Ct. 2052. When challenging
a conviction, "the question is whether there is a
reasonable probability that, absent the errors, the
factfinder would have had a reasonable doubt respecting
guilt." Id. at 695, 104 S.Ct. 2052. And, "[w]hen a
defendant challenges a death sentence . . ., the question
is whether there is a reasonable probability that, absent
the errors, the sentencer . . . would have concluded that
the balance of aggravating and mitigating circumstances
did not warrant death." Id.

Fisher v. Lee, 215 F.3d at 446-447. In the case of a guilty plea,

petitioner may also have to explain why, without counsel's alleged

shortcomings, he or she would have pled not guilty and insisted on

going to trial. Hill v. Lockhart, 474 U.S. 52, 60, 106 S.Ct. 366,

88 L.Ed.2d 203 (1985).

Counsel necessarily makes a strategic decision concerning

which factors to submit for the jury's consideration. Evidence

-15-

that Natalie considered petitioner to be a father figure, in fact, may have been seen by the jury to be an aggravating factor since he so horribly abused that trust. The evidence of Peggy McBride's opinion lacked substance. Likewise with the military service, petitioner did not have a spotless military record and it may have been as well not to try to remind the jury of that fact. Certainly, these factors would not have justified a finding of ineffective assistance of counsel even if the matter were properly before the Court.

The next issue, which petitioner raises from his procedurally barred amended motion for appropriate relief, is that counsel failed to request that the jury be instructed on voluntary intoxication. Counsel fails to argue this matter in the brief and the petition itself fails to disclose any fact which would indicate that petitioner's constitutional rights were violated. Respondent, in fact, shows that an instruction on voluntary intoxication was not required, citing State v. Brown, 335 N.C. 477, 439 S.E.2d 589 (1994). Brown indicates that mere intoxication is not sufficient to show that petitioner was utterly incapable of forming a deliberate and premeditated intent to kill. In the amended motion for appropriate relief, the only facts which petitioner advances are that petitioner was drinking at the time he committed the murder, but utterly fails to point to any evidence which would indicate intoxication sufficient to warrant an involuntary intoxication instruction. See Fisher v. Lee, 215 F.3d at 451. Counsel is not required to perform futile acts.

-16-

The last claim, arising from his defaulted state motion for appropriate relief, is that counsel on appeal erred by abandoning his motion to suppress his statements. This claim is apparently based on the idea that officers had no probable cause to arrest him after he had previously led them to believe that Natalie ran away or was kidnaped, but then after a few days admitted he killed her, but claimed it was an accident. From this, he concludes that any post-arrest statement must be suppressed. The mere recitation of the facts reveals probable cause for arrest and, therefore, demonstrates that the claim lacks merit. Therefore, any statements made after his arrest were not "illegally seized." An attorney need not raise every non-frivolous issue on appeal. <u>Jones v. Barnes</u>, 463 U.S. 745, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983). Consequently, counsel need not raise frivolous or marginal issues such as this one. Petitioner fails to show substantial merit to this issue and fails the reasonableness prong of the test. Second, he fails to show prejudice. The claim should be dismissed.

In conclusion, the issues raised in ground four are procedurally barred and defaulted under state law and should be dismissed here on that ground. Also, the claims are without merit.

The remaining matters raised by petitioner in this Court were all decided by the North Carolina Supreme Court. For ground five, petitioner claims that the State violated his rights by exercising peremptory challenges to exclude jurors solely by reason of their race. For facts, petitioner claims that the State excused fifteen jurors via peremptory challenges and that nine of these were black.

-17-

Petitioner is white, as was the victim. The North Carolina Supreme Court specifically addressed this issue, considered the Batson factors and found that here, the victim was white, defendant was white, several witnesses were white, and that this was not a case where race was involved. Moreover, it noted that the prosecutor accepted three black jurors when he had peremptory challenges remaining. Thus, there is no indication that this was a case which would give any suspicion that race would be a motive behind the exercise of peremptory challenges.

In any event, there was a specific record concerning the challenges because petitioner made a Batson challenge. The prosecutor made a challenge with respect to three potential jurors, but the prosecutor gave specific reasons for dismissal of them. These reasons were that one was hesitant on the death penalty and this juror also had been convicted of worthless checks and two speeding violations. Another juror worked with three- and four-year-old children and was hesitant on the death penalty issue. The third juror was hard of hearing and had difficulty understanding questions. Petitioner did not show any factors to counteract the explanations given by the prosecutor.

In the second Batson challenge, the North Carolina Supreme Court found that the prosecutor dismissed two jurors because a source within the High Point Police Department indicated they were weak on the death penalty and in addition, a court officer noted that one of the prospective jurors was nodding off at least twice during the voir dire. The record shows that the trial court noted

-18-

that after giving this explanation, the prosecutor passed a minority juror called as a replacement. The court and found that the reasons enunciated by the prosecutor were valid.

Petitioner raised a subsequent Batson challenge when the State excused three more black jurors, one because he stated he did not believe in the death penalty and may well have had a prior common law robbery conviction. A second juror was dismissed because he was worried about his employment and loss of income, never thought about the death penalty, and denied convictions even though state records showed that he had prior convictions for driving while impaired and driving while license revoked. The last juror was excused because it appeared he had a record of reckless driving, driving while impaired, worthless checks, injury to property convictions, and simple assault by pointing a gun. The state supreme court found those all to be valid reasons and that the trial court did not err in so concluding. The final challenge was with respect to a prospective alternate juror. The prosecutor explained that this juror had trouble hearing as evidenced by her failure to heed the court's instruction about not watching television or listening to radio broadcasts concerning the case.

Under Batson, once a defendant has demonstrated a prima facie case of discrimination, the prosecutor must give clear and reasonable explanation for the reasons in exercising the challenge. This explanation, however, need not justify an exercise for challenge for cause, nor necessarily be persuasive or plausible. The reason need not necessarily make sense, so long as there is

-19-

nothing inherent which would disclose discriminatory intent. <u>Evans v. Smith</u>, 220 F.3d at 312-13. Finally, the defendant, at all times, bears the ultimate burden of persuasion as to the existence of purposeful discrimination. <u>Id</u>. The North Carolina Supreme Court applied this law. The recitation of the facts, as noted above, makes it clear that the North Carolina Supreme Court's finding of no <u>Batson</u> violation is not clearly contrary to, nor an unreasonable application of, Supreme Court law and precedent. Petitioner failed to meet his burden of proof.

For his sixth claim of error, petitioner contends that his rights to due process, equal protection, and an impartial jury was denied because the State failed to produce criminal records of prospective jurors. Petitioner fails to cite any Supreme Court case which would justify this contention. The state court discusses this as a matter of state law and not federal law. There is no indication whatsoever that petitioner raised a federal claim in regard to this matter. Therefore, this ground for relief should be denied for being without merit.

In his seventh ground for relief, petitioner claims that his right to a fair and impartial jury was denied when a Mr. Mayberry was challenged for cause. For facts, petitioner states that Mr. Mayberry consistently said his views would prevent him from considering life imprisonment as a punishment upon conviction, yet the trial court allegedly refused to remove Mr. Mayberry from the jury for cause. The North Carolina Supreme Court considered this issue and held that upon a reading of the transcript, petitioner

-20-

failed to establish that Mr. Mayberry's views on capital punishment would substantially impair his performance. It noted that petitioner initially challenged Mayberry based on his response that life imprisonment was not fair to the general public for someone convicted of first-degree murder. However, the prosecutor was then allowed to continue to question Mr. Mayberry. The court itself then conducted a <u>voir</u> <u>dire</u> and told Mr. Mayberry that a juror had to consider both penalties at sentencing and weigh whether the State carried its burden on each of the three issues and, therefore, someone who would automatically vote to impose the death penalty could not carry out his duty as a juror. The court then asked Mr. Mayberry whether he could follow the law and require the State to meet its burden of proof. Mr. Mayberry then stated that he now understood the law and guessed that he would have to obey it and, when specifically asked whether he would abide by the court's instructions, he stated he guessed that he would have to. Thereafter, defense counsel questioned Mayberry and he restated that he would consider the law as instructed by the trial court.

The North Carolina Supreme Court found that because Mayberry stated that he could set aside his feeling concerning the death penalty and follow the law as given by the court that, therefore, he should not be excused as a matter of state law. In his brief, petitioner fails to show how the state court's decision was contrary to, or an unreasonable application of, United States Supreme Court law. The North Carolina Supreme Court's opinion appears to follow the law explicitly. It does appear that Mr.

-21-

Mayberry required a "lot of explaining" in order to understand the system. Yet, there is no evidence that Mr. Mayberry would not be able to follow the law. It must be remembered that this Court is only reviewing a cold record devoid of voice intonation and other nuances that are only available to the trial judge. To the extent petitioner still questioned Mr. Mayberry's ability to follow the law, he could have exercised a peremptory challenge as to Mr. Mayberry, inasmuch as that is the purpose of such challenges. The record does not show that the North Carolina Supreme Court's decision was unreasonable or contrary to law. Therefore, petitioner's seventh ground for relief is without merit.

In ground eight, petitioner claims that the State denied him the right to explore the death penalty issue during voir dire. For facts, petitioner states that the trial court continuously sustained the State's objections to questions posed by petitioner's counsel to explore the prospective jurors' views on the death penalty and the age of the victim.

In the state court, this issue was confined to jurors Mayberry and Peterson. The North Carolina Supreme Court cited examples of petitioner's questions, which asked the jurors what feelings or life experiences that they had which would make them feel strongly for the death penalty, whether the juror thought petitioner should prove why he should be given life imprisonment rather than the death penalty, and whether the age of the victim would make a difference in imposing a life sentence or death, etc. Petitioner argued that he was required to ask these questions in order to open

-22-

up the foundation for a challenge for cause against these jurors, citing Morgan v. Illinois 504 U.S. 719, 733, 112 S.Ct. 2222, 119 L.Ed.2d 492 (1992).

Morgan requires a trial court to ferret out individuals who would not follow the law and instead would simply vote to impose the death penalty. The North Carolina Supreme Court found that it was not proper for petitioner to ask potential jurors if they would impose the death penalty under the particular facts and circumstances of the case. What the court found was that the questions were an improper attempt to stake out jurors to determine the kind of verdict the jurors would render given a certain set of circumstances. Nothing in Morgan indicates that defense counsel can ask the kind of questions which were presented here. In fact, it is quite clear by the trial court's examination of Mayberry, what would be the more proper procedure. Petitioner, however, wanted to go beyond those questions. He wanted to have the jurors give an opinion on how they would vote considering the particular circumstances of the case, without having ever been told what their legal obligations were as jurors. Petitioner also wanted to make an inquiry as to the degree of difficulty a juror would have in making a decision, again before the juror was informed of his or her obligations. Morgan does not give him a right to do so. The North Carolina Supreme Court further noted that even with respect to questions concerning the jurors' exposure or relationship to children, in each instance the prospective juror answered before the objection was made or had answered a similar question

-23-

previously, or else an objection was made as to form and defense counsel was allowed to restate the question. Therefore, that court found that petitioner failed to show any abuse of discretion by the trial court. A review of the North Carolina Supreme Court's decision on this issue fails to show that it was contrary to, or an unreasonable application of, federal law.

In ground nine, petitioner alleges that his Fifth, Sixth and Fourteenth Amendment rights were denied by the State because it failed to provide information to him. For supporting facts, he states that the trial court permitted FBI Agent Durdack [correct spelling "Dyrdak"] to testify to the substance of an interview with petitioner when petitioner was not provided the substance of these statements in discovery. Petitioner fails to cite any Supreme Court precedent governing this issue. A review of the state court decision shows that the issue was decided under state law. Therefore, petitioner has failed to allege a meaningful violation of his constitutional rights.

In addition, the North Carolina Supreme Court found no error, even under state law. That court found that the State wanted to use Dyrdak for the purpose of showing that petitioner's explanation about accidently hitting Natalie with the truck originated from an interviewing technique the agent employed when he (the agent) suggested this version of events to petitioner in order to elicit a response from him. The defense attorney objected that the entire line of testimony, in regard to petitioner's truck explanation, originated from the oral statements petitioner made to Dyrdak.

-24-

When the State failed to disclose the substance of the statements made to Dyrdak, petitioner argued that the state thereby violated the trial court's discovery order. Petitioner contended that all of petitioner's statements should be suppressed as a discovery sanction. The trial court denied the request. It found that Dyrdak obtained the information concerning petitioner owning a truck from other police officers and not from petitioner himself. As a consequence, Dyrdak did not make his comments to petitioner based on information he obtained from petitioner. As a result, the trial court found that the State did not violate the discovery order by not turning over the substance of the Dyrdak scenario to petitioner. On appeal, petitioner merely argued that the trial court abused its discretion. The North Carolina Supreme Court found otherwise.

For ground ten, petitioner alleges a violation of his rights under the Confrontation and Due Process Clause with respect to the trial court overruling petitioner's objections concerning the prosecutor's arguments. Petitioner fails to cite to any arguments in the petition or in his brief. He does not cite any controlling Supreme Court precedent which allegedly was violated as a result of the prosecutor's argument. The North Carolina Supreme Court did examine the prosecutor's arguments, but made its decision on state law.

On appeal to the North Carolina Supreme Court, petitioner claimed that the prosecutor's arguments contained improper statements of the prosecutor's own personal beliefs and opinions

-25-

and were not based on a reasonable interpretation of the evidence. The first challenged argument concerns the prosecutor's implication that Ms. Craven may have asked petitioner why he did not take Natalie to the hospital which was very close, but instead took her to Randleman. The North Carolina Supreme Court found that while there was no explicit testimony to this effect, in context, the prosecutor's remark merely emphasized the unbelievability of petitioner's explanation that after he ran over Natalie with his truck, he took her to his residence in Randleman rather than right over to the hospital.

The next argument the North Carolina Supreme Court examined was when the prosecutor indicated that the bruises were caused by an adult hand and implied that this hand was holding down a little four-year-old and forcibly having intercourse with her while she moaned. The North Carolina Supreme Court found that this was a permissible synthesis of the evidence and a possible scenario. Another argument challenged was the prosecutor's statement that the prosecutor spoke for Natalie, who was dead and who died needlessly just to fulfill the sick desires of petitioner. The North Carolina Supreme Court found that the evidence permitted a finding that petitioner sexually assaulted Natalie and killed her in part of the same violent transaction and that it was not unfair to speculate that petitioner did this to satisfy perverse desires. Finally, petitioner excepted to the prosecutor's statement that Dr. Clark had testified that Natalie was raped. Petitioner contended that the evidence on rape was weak. The North Carolina Supreme Court

found that Clark, in fact, testified that the injuries were most indicative of forced intercourse and, therefore, the argument was not improper. During the sentencing phase, petitioner challenged the prosecutor's argument regarding what Natalie was thinking and feeling during the time she was brutally raped and murdered and further objected to the prosecutor's argument that the victim's age was an aggravating circumstance. The North Carolina Supreme Court found under state law that remarks concerning what the victim must have been thinking as she was dying was not grossly improper, particularly considering the fact of the overwhelming evidence against petitioner. With respect to the argument concerning Natalie's age as a ground for imposing the death penalty, the North Carolina Supreme Court found the reference to age merely emphasized the brutality of the crime as well as the depravity of petitioner's acts, and that it did not amount to an improper argument for an aggravating factor not supported by evidence.

Petitioner fails to show that any of his federal constitutional rights were violated. Petitioner did not raise that question below, nor does he raise it here. Even if he had, the result would not be changed. The standard with respect to prosecutorial comments is not whether they were undesirable or even universally condemned. Rather, petitioner must show that the comment so infected the trial with unfairness to make the resulting conviction a denial of due process. <u>Darden v. Wainwright</u>, 477 U.S. 168, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986). To find a constitutional violation, one must look to see whether the conduct

-27-

was improper, whether it prejudicially affected any other substantive right, whether the remarks were pronounced and persistent creating a likelihood of misleading the jury to defend its prejudice, the strength of the evidence, and any curative actions taken by the court. See United States v. Brockington, 849 F.2d 872 (4th Cir. 1988). Even if petitioner had raised this standard in state court, the North Carolina Supreme Court's decision would pass muster on the question as not being contrary to, or an unreasonable application of, the law. Here, the case against petitioner was very strong, the comments were a legitimate view of the evidence, and not for the sole purpose of misleading the jury or prejudicing petitioner. Also, the remarks were not pronounced, unusual, overly numerous or unfairly prejudicial.

In ground eleven, petitioner argues that his federal constitutional rights were violated because the trial court submitted to the jury the aggravating circumstances that the murder was especially heinous, atrocious, and cruel. Petitioner argues that this instruction was unconstitutionally vague and overbroad. Petitioner does not cite any case law which has found the instruction of the type used in this case to be unconstitutional. During the direct appeal, petitioner had to concede that the North Carolina Supreme Court has consistently rejected such a claim and, therefore, it found no reason to revisit the matter. In addition, respondent notes that the Fourth Circuit has found this instruction to pass muster in Huffstetler v. Dixon, 28 F.3d 1209 th Cir. 1994)(Table), cert. denied, 513 U.S. 1193, 115 S.Ct. 1258, 131

-28-

L.Ed.2d 138 (1995). Respondent further noted that the Fourth Circuit has denied relief cases where the heinous, atrocious, and cruel aggravating factor was found by the jury, citing Boyd v. French, 147 F.3d 319, 323 (4th Cir. 1998), cert. denied, 525 U.S. 1150, 119 S.Ct. 1050, 143 L.Ed.2d 56 (1999); and Sexton v. French, 163 F.3d 874, 878 (4th Cir. 1998), cert. denied, 120 S.Ct. 139, 145 L.Ed.2d 118 (1999). Finally, in Fisher v. Lee, 215 F.3d at 457-59, the Fourth Circuit found the additional limiting instructions given by the North Carolina courts in regard to this particular aggravating circumstance to pass constitutional muster and, at a minimum, for ineffective assistance of counsel claims.

Nothing in this case shows that either the trial court or the North Carolina Supreme Court erred in submitting the heinous aggravating factor to the jury, or that the jury was improperly instructed concerning this factor. The North Carolina Supreme Court found that the murder was especially cruel and dehumanizing because of the beating, the amount of bleeding and bruising, and being left in a trash bag, all of which was in addition to the sexual assault and rape. It further found that there was separate evidence to support the "heinousness" aggravating fact apart from the rape evidence. This included the beating, fractures, strangulation, pain, and anguish. Therefore, the court found that the jury was properly instructed. Petitioner fails to show that the instructions here were a violation of his state law or federal constitutional rights and there is no indication that the North

-29-

Carolina Supreme's Court decision was contrary to, or an unreasonable application of, federal constitutional law.

In ground twelve, he states that petitioner's rights were violated when the trial court "found mitigating circumstances to be discretionary in issues three and four." For facts, he states that the trial court permitted jurors to disregard mitigating circumstances properly found by one or more jurors. Petitioner fails to cite any Supreme Court case which would make this claim to be a requirement. The North Carolina Supreme Court analyzed the issue under state law and found no error. Petitioner fails to show otherwise.

For ground thirteen, petitioner claims that his rights were violated when the trial court denied his request to instruct the jury that he would be sentenced to life for a conviction of first-degree rape. For facts, petitioner states the jurors returned to the courtroom to ask whether they were to sentence petitioner both for first-degree rape as well as murder. Petitioner requested that the jury be instructed that he would be given a mandatory life sentence if convicted of first-degree rape. However, the "Simmons" Rule requiring an instruction on parole arises when the defendant's future dangerousness has been put at issue and when there is no possibility of parole. Ramdass v. Angelone, ____ U.S. ____, 120 S.Ct. 2113, 2126, 147 L.Ed.2d 125 (2000). Petitioner fails to show the situation in this case meets either requirement. The trial court denied the request. Petitioner fails to cite a Supreme C urt precedent which would require the trial court to have so instructed

-30-

the jury. The North Carolina Supreme Court found that the request was properly denied under state law. Petitioner fails to show that his constitutional rights were violated.

Finally, in ground fourteen, petitioner states that his rights were violated when he was prevented from questioning jurors considering their beliefs about parole eligibility. Petitioner fails to show that there is a United States Supreme Court precedent which would require this kind of voir dire questioning. The North Carolina Supreme Court found that there was no error in the trial court denying petitioner's request. Petitioner fails to show that his federal constitutional rights were violated.

**IT IS THEREFORE RECOMMENDED** that the petition for writ of habeas corpus (docket no. 8) be denied, that respondent's motion to dismiss (docket nos. 9 & 10) be granted, and that this action be dismissed.

Russell A. Eliason
United States Magistrate Judge

December 14, 2000

-31-