IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

JEFFREY CLAYTON KANDIES )
                         )
            Petitioner,  )
                         )
v.                       )      1:99CV00764
                         )
ROBY C. LEE, Warden,     )
Central Prison,          )
Raleigh, North Carolina, )
                         )
            Respondent,  )
_____)

FILED
MAR 4 - 2003
IN THIS OFFICE
Clerk U. S. District Court
Greensboro, N. C.
By _____

## MEMORANDUM OPINION

TILLEY, Chief Judge

   This matter is before the Court on Jeffrey Kandies' Petition for Writ of
Habeas Corpus under 28 U.S.C. § 2254 [Doc. # 8].  For the reasons set forth
below, the Recommendation of the United States Magistrate Judge to deny the
Petition for Writ of Habeas Corpus [Doc. # 20] is ADOPTED and the Petition is
DENIED.

I.

   The facts as found by the Magistrate Judge[1] are adopted and elaborated on
only when necessary to respond to the petitioner's (Petitioner) objections to the
Magistrate Judge's Recommendation.  The facts are as follows:  Petitioner was
convicted for the first degree murder and first degree rape of Natalie Lynn Osborne,

---

[1] See Recommendation of United States Magistrate Judge at 1-4.

the four-year-old daughter his fiancee, Patricia Craven.[2]  Ms. Craven had three

children including one child she had with Petitioner.  At the time of the incident

Ms. Craven and Petitioner had separate residents approximately ten miles apart.

On Easter Monday, April 20, 1992, both Ms. Craven and Petitioner were

with Natalie until sometime between 4:00 and 4:30 p.m.  Around that time,

Petitioner left to go to the store and did not return until 7:00 p.m.  During that

period of time, Petitioner stopped at a convenience store.  He complained about his

hand hurting and said he had been in a fight with his brother.  The clerk at the

convenience store noticed the hand was beginning to swell and suggested

Petitioner permit another customer, a medical technician, to look at the hand.

Petitioner left immediately.

When Petitioner returned to Ms. Craven's home at 7:00 p.m., Natalie could

not be found and Petitioner reported her missing.  An extensive search was

conducted to find Natalie.   Around midnight, Petitioner returned to the

convenience store asking if the clerk had seen Natalie.  At that time, the clerk

observed black garbage bags in the back of Petitioner's truck.

The police, believing that Petitioner and Ms. Craven may have hidden Natalie

at Ms. Craven's residence in order to deny Natalie's father access, searched

Petitioner's residence the next day.  The police did not locate Natalie.

---

[2]The facts in this case are also set out in State v. Kandies, 342 N.C. 419,
430-433, 467 S.E.2d 67, cert. denied 519 U.S. 894 (1996).

2

On Wednesday, April 23, 1992, Petitioner was questioned at the police station. The police returned Petitioner to Ms. Craven's residence around 1:00 a.m. that night. When he arrived, Ms. Craven asked him if he knew what happened to Natalie and he volunteered that he had hit Natalie with his truck on Monday, April 20, 1992. Petitioner claimed that he panicked because he had been drinking and he took Natalie to his house to clean her up. He stated that Natalie did not look right, so he concealed her and her clothes in a garbage bag which he put into a bedroom closet. After the exchange, Ms. Craven immediately called the police. Petitioner was returned to the police station where he provided a more detailed statement.

The police searched Petitioner's residence, with his permission, and found Natalie's body buried under carpet pieces and a pile of clothes in a bedroom closet. Natalie's bloody playsuit and a bloody pair of panties were found inside a garbage bag in the closet.

At trial, a forensic pathologist testified that there were blunt force traumas on Natalie's head, neck, skull, back, and both sides of her body. Some bruises were small and rounded and distributed in a pattern that suggested that they were made by an adult hand. Natalie's pelvic region was also injured with bruising on both sides of the vagina which was full of blood. A blunt force trauma caused a tear in the back wall of the vagina and the vagina opening was gaping. The pathologist opined that the injuries indicated sexual assault had occurred at or

3

about the same time as the time of death.

After the results of the autopsy were revealed on April 23, 1992, the police interrogated Petitioner and mentioned the possibility of sexual assault. Petitioner responded that he had already told Ms. Craven that the police would say that he had done something like that to Natalie. Instead, Petitioner said he had taken Natalie to his house and put her in the bathtub to determine how badly she was injured. Petitioner stated that he could not handle the situation and may have strangled Natalie, but he did not sexually assault her. The police found blood in numerous places in Petitioner's residence and in his truck.

Petitioner did not present any evidence during the guilt-innocent phase of his trial, and the jury found Petitioner guilty of first degree murder on both felony murder and premeditation and deliberation premises. The jury also found Petitioner guilty of first degree rape.

During the sentencing phase, Petitioner presented evidence from a clinical psychologist who testified that Petitioner used alcohol and marijuana on a daily basis for several years. The psychologist opined that Petitioner was suffering from acute intoxication that may have affected his judgment and ability to control his emotions. The psychologist further opined that Petitioner had a mental disorder and that his ability to appreciate the criminality of his actions was impaired.

The jury found aggravating circumstances on the grounds that Petitioner committed the act during the commission of first degree rape, and further that the

4

murder was especially heinous, atrocious or cruel. The jury also found three of the five proposed statutory mitigating circumstances and eighteen of the twenty-eight non-statutory mitigating circumstances submitted. The jury unanimously recommended a sentence of death, which the trial court imposed.

## II.

Petitioner appealed his conviction which was affirmed by the North Carolina Supreme Court. State v. Kandies, 342 N.C. 419, 467 S.E.2d 67, cert. denied 519 U.S. 894 (1996). Petitioner filed a motion for appropriate relief in Superior Court, in which he alleged three things: (1) that his Sixth Amendment right to effective assistance of counsel was denied because his counsel failed to discover evidence that Petitioner had been sexually molested as a young child and offer that evidence in mitigation; (2) his counsel was not qualified to try a capital case; and (3) the evidence that Petitioner committed rape was insufficient.

Immediately prior to the Superior Court's decision, Petitioner's counsel requested to be relieved of representation. Contemporaneously, the Superior Court denied the motion for appropriate relief and allowed counsel's motion to withdraw. New counsel then petitioned the North Carolina Supreme Court for relief. In the Petition for Certiorari, Petitioner raised two additional issues: (1) the Superior Court should not have decided the motion for relief before affording a new attorney the right to submit additional briefing; and (2) the Superior Court erred by not affording Petitioner an evidentiary hearing.

5

The North Carolina Supreme Court remanded the matter back to the Superior Court for consideration of Petitioner's motion in light of that court's decision in State v. McHone, 348 N.C. 254 (1998).[3] In McHone, the court had found that under N.C.G.S. § 15A-1420 (c), a state post-conviction court must make written conclusions of law stating its reasons before denying a post-conviction motion alleging a violation of constitutional rights. Id. at 257. McHone further held that if a post-conviction motion merely alleges questions of law or if the supporting information to the motion would not affect the legal conclusion, then the motion can be denied without a hearing even if facts are in dispute. Id.

On review, the Supreme Court held that Petitioner was not automatically entitled to an evidentiary hearing simply because he alleged facts relating to constitutional issues, but it remanded for the Superior Court to specifically find whether or not an evidentiary hearing was required to resolve facts.

On November 30, 1998, Petitioner filed an amended motion for appropriate relief that attempted to raise three additional arguments: (1) that his counsel was ineffective for failing to offer evidence that someone else other than Petitioner had sexually abused Natalie; (2) that his counsel was ineffective for failing to request that the trial court submit additional non-statutory mitigating factors, and (3) that his counsel was ineffective for failing to request that the jury be instructed in accordance with the law of voluntary intoxication.

---

[3]State v. Kandies, 525 S.E.2d 185 (NC 1998).

6

On April 29, 1999, the Superior Court determined there was no need for an evidentiary hearing because there was no evidentiary dispute about a dispositive fact. The court also denied Petitioner's motion to amend because the remand order from the North Carolina Supreme Court did not authorize an amendment. The court also stated that Petitioner should have included those claims in the original motion for appropriate relief filed May 8, 1997. The North Carolina Supreme Court summarily denied certiorari in an order dated August 19, 1999. State v. Kandies, 350 N.C. 843, 539 S.E.2d 640 (1999).

Petitioner filed a Petition for Writ of Habeas Corpus in the Middle District of North Carolina. The Magistrate Judge filed the Recommendations on December 14, 2000. Petitioner raises four objections to the Magistrate Judge's Recommendations. Petitioner argues that the Magistrate Judge incorrectly recommended that the following arguments be dismissed: (1) that the state court violated Petitioner's due process rights by addressing the motion for appropriate relief despite concluding he was represented in the motion for appropriate relief by counsel with conflict issues; (2) that Petitioner was denied due process of law because the MAR court denied an evidentiary hearing; (3) that Petitioner should have been allowed to amend his motion for appropriate relief after it was remanded by the North Carolina Supreme Court; and (4) that juror Mayberry should have been dismissed for cause. Each of the objections will be addressed separately.

III.

The Magistrate Judge applied the correct standard of review. (Rec. of United Stated Magistrate Judge at 7). The standard of review is as follows: under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a federal court reviewing a state court adjudication is required to give deference to that adjudication. 28 U.S.C. § 2254 (West. Supp. 2002). A federal court reviews a state court adjudication only to determine whether the decision is contrary to established federal law or if it involved an unreasonable application of federal law. Williams v. Taylor, 529 U.S. 362, 405 (2000).

A decision is contrary to federal law: (1) if the state court comes to a conclusion opposite that reached by the United States Supreme Court; or (2) if the state court decides a case with materially indistinguishable facts differently than the United States Supreme Court. Evans v. Smith, 220 F.3d 306, 311-312 (4th Cir. 2000). A state court decision is an unreasonable application of federal law when a state court has identified the correct governing legal principle, but applies that principle unreasonably to the facts of the case in front of it. Id.

Under the AEDPA, if the state court has made factual findings on the merits, those findings are entitled to a presumption of correctness, which can only be rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Therefore, the federal district court reviews findings made by the state court with a highly deferential standard of review. If, on the other hand, the state court decision was

8

based on procedural grounds or otherwise did not consider the substantive merits of the claim, then those issues are subject to de novo review. Boyette v. Lefevre, 246 F.3d 76, 91 (2nd Cir. 2001) (holding de novo review, rather than AEDPA deference, appropriate when the district court is unable to determine what the state court decided on a particular issue).

A.

First, Petitioner argues that the state court violated his rights to fundamental fairness by addressing his motion for appropriate relief despite concluding that he was represented in the motion by counsel with conflict issues. On February 9, 1998, Petitioner's post conviction counsel filed a motion to withdraw due to conflict. The state court allowed counsel to withdraw, without appointing other counsel. Instead, the state court ruled on the motion for appropriate relief. The Magistrate Judge recommended that this argument be dismissed.

In the objection, Petitioner renews the argument that his due process rights were violated by the state court's actions. Petitioner argues that the due process rights which pertain to direct appeal and trial also apply to post conviction proceedings. Petitioner bases this argument on the United States Supreme Court's decision in Ohio Adult Parole Authority v. Woodard, 523 U.S. 272 (1998). Woodard, however, is anything but helpful to Petitioner's argument. It was in Woodard that Justice Rehnquist writing for a plurality observed:

> In Evitts [Evitts v. Lucey, 469 U.S. 387, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985)], the Court held that there is a constitutional right

9

to effective assistance of counsel on a first appeal as of right. Id. at 396, 105 S.Ct. at 836. This holding, however, was expressly based on the combination of two lines of prior decisions. One line of cases held that the Fourteenth Amendment guarantees a criminal defendant pursuing a first appeal as of right certain minimum safeguards necessary to make that appeal adequate and effective, including the right to counsel. See Griffin v. Illinois, 351 U.S., at 20, 76 S.Ct., at 591; Douglas v. California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963). The second line of cases held that the Sixth Amendment right to counsel at trial comprehended the right to effective assistance of counsel. See Gideon v. Wainwright, 372 U.S. 335, 344, 83 S.Ct. 792, 796, 9 L.Ed.2d 799 (1963); Cuyler v. Sullivan, 446 U.S. 335, 344, 100 S.Ct. 1708, 1716, 64 L.Ed.2d 333 (1980). These two lines of cases justified the Court's conclusion that a criminal defendant has a right to effective assistance of counsel on a first appeal as of right. Evitts, supra, at 394-96, 105 S.Ct. at 834-36.

The Court did not thereby purport to create a new "strand" of due process analysis. And it did not rely on the notion of a continuum of due process rights. Instead, the Court evaluated the function and significance of a first appeal as of right, in light of prior cases. Related decisions similarly make clear that there is no continuum requiring varying levels of process at every conceivable phase of the criminal system. See, e.g., Giarratano, 492 U.S., at 9-10, 109 S.Ct., at 2769-71 (no due process right to counsel for capital inmates in state postconviction proceedings); Pennsylvania v. Finley, 481 U.S. 551, 555-57, 107 S.Ct. 1990, 1993-94, 95 L.Ed.2d 539 (1987) (no right to counsel in state postconviction proceedings); Ross v. Moffitt, 417 U.S. 600, 610-11, 94 S.Ct. 2437, 2443-44, 41 L.Ed.2d 341 (1974) (no right to counsel for discretionary appeals on direct review).

523 U.S. at 283-84; 118 S.Ct. at 1251

In Murray v. Giarratano, 469 U.S. 1, 7; 109 S.Ct. 2765, 2769 (1989) (plurality opinion), the Court observed that states have no obligation to provide post conviction relief. A habeas Petitioner cannot claim constitutionally ineffective assistance of counsel in a post conviction proceeding when there is no

10

constitutional right to counsel. <u>Wainwright v. Torna</u>, 455 U.S. 586, 588 (1982) (where there is no constitutional right to counsel there can be no deprivation of effective assistance). <u>See also</u> <u>Mackall v. Angelone</u>, 131 F.3d 442, 447 (4th Cir. 1997) <u>cert</u>. <u>denied</u> 522 U.S. 1100 (1998).

Even if there were a due process right to a conflict free counsel in a post-conviction proceeding, Petitioner fails to show that he suffered injury as a result of an actual conflict of interest. In order to establish a violation of due process, a defendant must show that an actual conflict of interest affected the lawyer's performance. <u>Cuyler v. Sullivan</u>, 446 U.S. 335, 348 (1980). To establish an actual conflict of interest, Petitioner must show that his interests diverged with respect to a material fact or legal issue. <u>Williams v. French</u>, 146 F.3d 203, 212 (4th Cir. 1998), <u>cert. denied</u>, 525 U.S. 1155 (1999). Filing of a lawsuit and a bar grievance does not <u>per se</u> create an actual conflict. <u>United States v. Burns</u>, 990 F.2d 1426, 1438 (4th Cir. 1993).

The record in Superior Court shows that on February 3, 1998 in a letter to the court, Petitioner's counsel expressed concern because Petitioner's mother had alleged that counsel conspired with the State against Petitioner and had filed suit against counsel. Petitioner's counsel called the allegations farfetched and felt that the suit against him could lead to a possible conflict of interest. The Superior Court allowed counsel's motion to withdraw, but did not find an actual conflict of interest based on the record. Instead, the Superior Court allowed counsel's

11

request because Petitioner's mother had attempted on two occasions to bring civil actions against him. The court appointed counsel to serve in further proceedings. Petitioner's case had already been prepared and briefed. Petitioner provides no evidence of actual injury.

The Magistrate Judge correctly observed that claims of error occurring in a state post-conviction proceeding cannot serve as a basis for federal habeas corpus relief. Wright v. Angelone, 151 F.3d 151, 159 (4th Cir. 1998). Petitioner has no right to effective assistance of counsel in his state Motion for Appropriate Relief hearing. Mickens v. Taylor, 240 F.3d 348, 363 (4th Cir. 2001)(en banc).

B.

Second, Petitioner argues that the state violated his right to fundamental fairness when it denied his motion for appropriate relief without an evidentiary hearing. The Magistrate Judge recommended that this argument be dismissed because Petitioner's argument appears to be that the state court violated its own law in denying the motion for appropriate relief without an evidentiary hearing, and that this violated Petitioner's federal due process rights. (Rec. of United States Magistrate Judge at 10). The Magistrate Judge also noted that Petitioner's argument that the state court failed to follow its own law was not a viable federal habeas claim. Wright, 151 F.3d at 159; (Id.).

In his objection, Petitioner argues that the failure to provide an evidentiary hearing is a violation of his due process rights. However, Petitioner fails to show

12

that a denial of an evidentiary hearing was a violation of federal due process. The state court held that there was no need for an evidentiary hearing because the issue could be resolved without a hearing and, as was just discussed, federal habeas corpus is not an appropriate vehicle to address claims that a state has, in some way, failed to provide an adequate post conviction procedure. <u>Murray</u> 469 U.S. at 7; 109 S.Ct. at 2769.

C.

Third, Petitioner claims a violation of due process because the Superior Court denied his motion to amend the MAR after it had been remanded by the North Carolina Supreme Court in order for the Superior Court to state its reasons for the original denial. Petitioner wished to add claims that he had been denied effective assistance of counsel in three ways: (1) that trial and direct appeal counsel failed to offer evidence that someone else had sexually abused the victim; (2) that trial counsel failed to request presentation to the jury of additional mitigating factors; and, (3) that trial counsel failed to request that the jury be instructed on involuntary intoxication.

The order of remand, in substantive entirety, read:

"Defendant's Petition for Writ of Certiorari is allowed for the limited purpose of remanding this case to the Superior Court, Randolph County, for reconsideration of defendant's Motion for Appropriate Relief in light of this Court's opinion in  State v. McHone, 348 N.C. 254, 499 S.E.2d 761 (1998);  in all other respects, the petition is denied."

13

Holding that the remand was, by its terms, for a limited purpose and relying also upon on N.C.G.S. §1419(a)(1) and (3)[4], the Superior Court denied the motion to amend.

Petitioner's contention raises several questions: whether the state court violated Petitioner's federal due process rights by not allowing an amendment, whether trial counsel was ineffective by not pursuing any of the three courses identified by Petitioner, and whether the claims have been procedurally defaulted by Petitioner's not having raised them either on direct appeal or in the original MAR.

The answer to the first question is that since a state is not constitutionally required to afford post conviction process following completion of the direct appeal, it could not be a violation of federal due process for the state not to allow an amendment to a post conviction motion even if the denial would be a violation of state law requirements.

The answer regarding procedural default is more elusive. "A federal habeas

---

[4]NCGS §15A-1419 provides in pertinent part:
(a) The following are grounds for the denial of a motion for appropriate relief, including motions filed in capital cases:
(1) Upon a previous motion made pursuant to this Article, the defendant was in a position to adequately raise the ground or issue underlying the present motion but did not do so. This subdivision does not apply when the previous motion was made within 10 days after entry of judgment or the previous motion was made during the pendency of the direct appeal.
(3) Upon a previous appeal the defendant was in a position to adequately raise the ground or issue underlying the present motion but did not do so.

court may not review a claim when a state court has declined to consider its merits on the basis of an independent and adequate state procedural rule." <u>Bacon v. Lee</u>, 225 F.3d 470, 476 (4th Cir. 2000). A state procedural rule is adequate if it is one that is regularly and consistently applied by the state court. It is independent if it does not depend on a federal constitutional ruling. <u>Id</u>. at 476. There is no question here that the state ruling was independent or that, in slightly different contexts, §15A-1491(a)(1) and (3) have each been held adequate; the question is whether either §15A-1491(a)(1) or (3) has been applied regularly and consistently to facts analogous to those in this case. <u>Id</u>. at 476. Insofar as subsection (3) -- not having been raised on direct appeal -- is concerned, direct appeal counsel and trial counsel were the same. In that setting, ineffective assistance at trial is not a claim that the North Carolina courts have required to be pursued on direct appeal. Insofar as subsection (1) -- that a "previous" MAR had been filed and the issues not raised -- is concerned, neither party has provided authority and this Court has found none regarding whether an MAR still pending upon remand for a limited purpose has been considered "previous" and, therefore, not subject to amendment. Without such prior determination, it is difficult to classify the application here as "regular". Therefore, because it is concluded that the claims Petitioner would have added have no merit, they will be addressed substantively rather than on grounds of procedural default. <u>Id</u>. at 477.

Again, Petitioner wished to amend his MAR to add the claim that he was

15

denied effective assistance of counsel in three ways: (1) trial counsel and direct appeal counsel failed to offer evidence that someone else sexually abused the victim; (2) trial counsel failed to request that additional mitigating factors be presented to the jury; and (3) trial counsel failed to request that the jury be instructed on involuntary intoxication.

In order to establish ineffective assistance of counsel Petitioner must demonstrate that: (1) his counsel's performance was deficient in that it fell below an objective standard of reasonableness and outside the large range of professionally competent assistance and (2) that the performance prejudiced the defense in that but for counsel's unprofessional conduct the result of the proceeding would have been different. Strickland v. Washington, 466 U.S. 668, 687-90 (1984). A court's evaluation of counsel's performance under this standard must be "highly deferential" as so not to second guess the performance. Id. at 689. In addition, to avoid the distortion of hindsight, the counsel's performance must be evaluated from the counsel's perspective at the time. Id.

Petitioner argued that his counsel erred by not presenting evidence that someone else other than Petitioner sexually assaulted Natalie. The Magistrate Judge observed that the only evidence that someone else could have assaulted Natalie consists of evidence arising two years prior to Natalie's death when it was alleged her father may have had sexual contact with her. (Rec. of United States Magistrate Judge at 13-14). In his objection, Petitioner argues that a Randolph

16

County grand jury found there was an indication of sexual contact by the father within six months of Natalie's death when Natalie had said her father "kissed her pee-pee". Even if the Magistrate Judge's observation is factually wrong with regard to time, Petitioner's argument ignores the evidence presented by the pathologist. The pathologist testified that the sexual abuse occurred at the time of Natalie's death and Petitioner was the only person present at that time. Petitioner was with Natalie all that day.

The evidence was offered in the guilt-innocence phase of the trial and rejected by the trial court. The ruling was upheld by the North Carolina Supreme Court which found it "too temporally remote to be relevant to this offense" because "[a]ll of the evidence indicates that the injuries to Natalie's vagina were recent in relation to the time of her death." State v. Kandies, 342 N.C. at 442; 67 S.E.2d at 79. The pathologist had found Natalie's vagina full of blood and described a laceration on the back wall of the vagina caused by blunt force indicative of forced intercourse. Because of the blood and lack of healing and because the opening of the vagina was patulous, he testified that the injuries were sustained about the time of death. Since the evidence had already been held inadmissible on the ground of relevancy, trial counsel did not err by failing to offer it during the sentencing phase.

Petitioner also argued he was provided ineffective assistance of counsel because his counsel failed to request additional mitigating factors for the jury. The

17

mitigating factors that Petitioner argued his counsel should have presented are: (1) testimony from Ms. Dempsey that Natalie considered Petitioner a father figure; (2) evidence from Peggy McBride who stated that, even though she did not know Petitioner well, she did not think that Petitioner was capable of committing the act; and (3) evidence of the non-statutory mitigating factor that Petitioner had served in the military.

When a defendant challenges a death sentence the question is whether there is a reasonable probability that, absent the errors, the sentencer would have concluded that the balance of aggravating and mitigating circumstances did not warrant death. Fisher v. Lee, 215 F.3d 438, 446-7 (4th Cir. 2000). Neither the Supreme Court nor the Fourth Circuit has held that it is per se ineffective assistance of counsel not to introduce mitigating evidence. Hunt v. Lee, 291 F.3d 285 (4th Cir. 2002). Counsel necessarily makes strategic decisions as to which factors to submit to the jury. The Magistrate Judge observed that the evidence regarding Natalie's view of Petitioner as a father figure could have been viewed as an aggravating factor because of the way Petitioner abused the trust. (Rec. of United States Magistrate Judge at 16). The Magistrate Judge also observed that the evidence from Ms. McBride lacked substance, and Petitioner's military record was not spotless. (Id.) All of the evidence could have been used by the jury against Petitioner, and it was objectively reasonable not to submit it to the jury. Therefore, trial counsel's election not to submit the evidence as mitigating factors

18

was not ineffective assistance of counsel.

The final issue that Petitioner raised was that counsel failed to request that the jury be instructed on voluntary intoxication. Mere intoxication is not sufficient to show that Petitioner was utterly incapable of forming a deliberate and premeditated intent to kill. State v. Brown, 335 N.C. 477 (1994). The Magistrate Judge observed that the only evidence that Petitioner advanced is that Petitioner was drinking on the night of the incident. (Rec. of United States Magistrate Judge at 16). Petitioner fails to point out any evidence to indicate intoxication sufficient to warrant an intoxication instruction. An attorney is not required to submit a futile argument to the court. Fisher, 215 F.3d at 451.

Therefore, the Magistrate Judge's recommendation is correct; Petitioner's claims are without merit.

### D.

Fourth, Petitioner claimed that his right to a fair and impartial jury was denied when juror Mr. Mayberry was not excused for cause. Petitioner objects to the Magistrate Judge's recommendation that this claim be dismissed. Petitioner alleged that the trial court refused to excuse Mr. Mayberry for cause even though he consistently stated that his views would prevent him from considering life imprisonment upon conviction. The North Carolina Supreme Court, after reviewing the transcript, held that Petitioner failed to establish that Mr. Mayberry's views would substantially impair his performance. Petitioner initially challenged Mr.

19

Mayberry on his statement that he did not think that life imprisonment for first degree murder was fair to the general public.

However, the prosecutor continued to question Mr. Mayberry in voir dire and told Mr. Mayberry that a juror had to consider both penalties at sentencing and weigh whether the State carried its burden as to each element of the case. The prosecutor further explained that a juror who would automatically vote to impose death could not carry out his duty as a juror. The trial court then asked Mr. Mayberry if he could follow the law and require the state to meet its burden of proof. Mr. Mayberry responded that he understood the law and guessed that he would have to obey it. The trial court further asked if Mr. Mayberry would follow its instructions. Mr. Mayberry responded that he guessed he would have to obey the court's instructions. The defense counsel also questioned Mr. Mayberry, who again stated that he would consider the law as instructed by the trial court.

The North Carolina Supreme Court found no violation in the seating because Mr. Mayberry stated he could set aside his feelings concerning the death penalty and follow the law as instructed by the court. Kandies, 342 N.C. at 438; 67 S.E.2d at 77

The standard for determining whether a prospective juror may properly be excused for cause for his views on capital punishment is whether those views would "prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath." Wainwright v. Witt, 469 U.S. 412,

424 (1985). Moreover, it has been established that where the prospective juror's response, as captured in the transcripts, reflects some ambiguity in the state of mind of the juror, then the determination made by the trial court, based on its eyeing the juror, is presumed to be consistent with the applicable standard. <u>See</u> <u>Briley v. Bass</u>, 750 F.2d 1238, 1246-47 (4th Cir.1984)

The Magistrate Judge observed that, although there was evidence that Mr. Mayberry needed a lot of explanation to understand the law, there is no evidence that he was unable to follow the law. (Rec. of United States Magistrate Judge at 21-22). In addition, the Magistrate Judge observed that Petitioner still had the ability to use a peremptory challenge to excuse Mr. Mayberry. (Rec. of United States Magistrate Judge at 22). Moreover, the state court trial judge was able to review the entire situation including body language and voice intonation that are not available through a cold record. Petitioner fails to show that the state court decision was contrary to or an unreasonable application of federal law. Therefore, the Magistrate Judge's recommendation is correct.

### IV.

For the reasons set forth above, the Recommendation of United States Magistrate Judge to deny the Petition for Writ of Habeas Corpus [Doc. # 20] is ADOPTED and the Petition is DENIED.

This the 4th day of March, 2003.

United States District Judge

21