IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

JEFFREY CLAYTON KANDIES,            )
                                    )
                Petitioner,          )
                                    )
        v.                          )       1:99CV00764
                                    )
MARVIN POLK, Warden,                )
Central Prison,                     )
Raleigh, North Carolina,            )
                                    )
                Respondent.          )

**O R D E R**

In this habeas corpus action, petitioner has filed a motion to conduct limited discovery. The following history is important to understanding the resolution of the matter. On March 4, 2003, this Court entered a Judgment denying petitioner's petition for a writ of habeas corpus. The United States Court of Appeals for the Fourth Circuit affirmed the denial of petitioner's habeas petition on September 24, 2004. Kandies v. Polk, 385 F.3d 457 (4th Cir. 2004). On June 27, 2005, the Supreme Court of the United States granted petitioner's writ of certiorari, vacated the Judgment, and remanded the case to the Fourth Circuit for further consideration in light of the intervening decision in Miller-El v. Dretke, 545 U.S. 231, 125 S.Ct. 2317 (2005). The Fourth Circuit, in turn, remanded the case to this Court for reconsideration.

While the present matter before the Court concerns a seemingly more limited aspect of the case, i.e., petitioner's motion for discovery, as will be seen, resolution of this motion requires some detailed consideration of the reasons the case was remanded for

reconsideration. Consequently, the previously ordered briefing schedule has been stayed pending the resolution of this issue. Respondent has filed a brief in opposition to petitioner's discovery request, petitioner has replied, and the motion is now ready for a ruling.

The specific issue before the Court concerns whether the jury selection in petitioner's case ran afoul of Batson v. Kentucky, 476 U.S. 79 (1986), because black jurors were impermissibly excused by the prosecution because of their race. Petitioner, who is a white male,[1] was convicted of first-degree murder and sentenced to death. State v. Kandies, 342 N.C. 419, 467 S.E.2d 67 (1996). Both this Court and the Court of Appeals found petitioner was not entitled to relief under the then current standard set out in Batson, which requires a prosecutor to give a facially neutral reason for the exercise of a peremptory challenge. That was the standard employed by the trial judge in this case. (Jury Select. Tr. Vol. III at 578.) The remand requires the Court to determine whether the later decision of Miller-El so alters the understanding of Batson as applied by the state court so as to require a different result in this case.

Prior to Batson, the first restriction on the use of peremptory challenges came in Swain v. Alabama, 380 U.S. 202 (1965). There, the Supreme Court held that the deliberate

---

[1] The fact that petitioner is a different race from that of the excluded jurors makes no difference because the Constitution not only protects defendants against discrimination, but the jurors themselves. Miller-El v. Dretke, 545 U.S. 231, 125 S.Ct. 2317, 2342 (2005)(Breyer, J., concurring).

-2-

exclusion of potential jurors on the basis of race violates the Equal Protection Clause. In order to raise a prima facie case of discrimination in the jury selection process, however, Swain required a showing of a "systematic use of peremptory challenges . . . over a period of time." Swain, 380 U.S. at 227. Over twenty years later, in Batson, 476 U.S. 79, the Supreme Court found Swain's systematic discrimination requirement presented too high a hurdle for the meaningful protection against purposeful discrimination in jury selection. Therefore, it attempted to lower the bar by holding that a defendant could show discrimination by focusing on the prosecutor's actions in selecting the defendant's own jury in order to establish a constitutional violation. See Miller-El, 125 S.Ct. at 2322-23. Twenty years later, this standard was also found to have significant limitations. As found in Miller-El, coming up with facially neutral reasons, even if false, for the exercise of a peremptory challenge is not difficult. Id. at 2325. It, therefore, adjusted both the Batson hearing procedures and review.

The adjustment of the Batson procedure wrought by Miller-El has the purpose of requiring trial courts be more critical of proffered race-neutral explanations. Miller-El, 125 S.Ct. at 2325. The Supreme Court specifically found that "Batson's individualized focus came with a weakness of its own owing to its very emphasis on the particular reasons a prosecutor might give. If any facially neutral reason sufficed to answer a Batson challenge, then Batson would not amount to much more than Swain." Id. To address that

problem, the Supreme Court established a, hopefully, more objective procedure with which to consider and determine the issue of intent in making peremptory challenges. It recognized that because there often may be multiple bases for a person's intent, the ability to determine whether the intent should be labeled discriminatory is not an easy task which can be performed with certainty.[2] Notwithstanding that the determination of the "true intent" behind peremptory challenges may be rather illusive, the Supreme Court has made it clear that the State and the prosecutor must defend the prosecutor's intent based on the first reason given, presumably with the idea that while this reason may not always reveal "true intent," it often will. Id. at 2332. This requires the trial judge to focus entirely on whether the prosecutor's first stated reason appears reasonable, as opposed to trying to determine whether other reasons would support the challenge. Indeed, the Supreme Court has made it clear that such post hoc reasoning may not be used as a basis for rejecting a Batson challenge either at

---

[2]In tightening the Batson procedure, the Supreme Court acknowledged that peremptory challenges were often a matter of "instinct," but that, nevertheless, a prosecutor "simply has got to state his reasons as best he can and stand or fall on the plausibility of the reasons he gives. Miller-El, 125 S.Ct. at 2332. And, as Justice Breyer recognized in his concurrence, the task at hand in evaluating those reasons can often amount to "second-guessing a prosecutor's instinctive judgment -- the underlying basis for which may be invisible even to the prosecutor exercising the challenge." Id. at 2340-2341 (Breyer, J., concurring). Peremptory challenges are often based on difficult to articulate intuitive feelings and perceptions.

-4-

the trial or on subsequent review, be it on appeal or on federal habeas review.[3]  Id.

Second, the Supreme Court emphasized that the trial judge was required to examine all of the evidence at the trial and not just whether the prosecution's reason was facially neutral.  Id. at 2325.  In Miller-El, this evidence, for example, consisted of a comparative analysis of questions asked to and answers given by white potential jurors and black potential jurors and any manipulation of juror seating.  Also, such evidence could include Swain-type pretrial or extra-trial evidence introduced at the Batson challenge, such as a history of a formal practice of systematically excluding blacks from juries.

With the above observations in mind concerning Miller-El, the Court will examine petitioner's request to conduct discovery.  He seeks to gather the following information: (1) all previous peremptory challenges made by Prosecutors Garland Yates and Elizabeth Toomes in other cases that have been subject to Batson challenges; (2) all lectures/speeches presented by, or articles/papers written by, Prosecutors Garland Yates and Elizabeth Toomes regarding jury selection in criminal cases; (3) any training/educational materials provided by the district attorney's office or judicial district to prosecutors regarding jury selection; (4) the juror questionnaires used by Prosecutors Garland

---

[3]This may result in the increased granting of relief for Batson challenges by the trial judge acting cautiously and prophylactically, when one group has been significantly disproportionately challenged by the prosecution.  Thus, the fact of disproportionate challenges may well assume greater importance.

-5-

Yates and Elizabeth Toomes in this case; and (5) all notes, memoranda, criminal records, and written materials regarding jury selection used by Prosecutors Garland Yates and Elizabeth Toomes in this case. Respondent opposes all discovery on the basis that it was not presented to or considered by the state court in making its determination. See 28 U.S.C. § 2254(d)(2).

This Court has discretion to allow parties to federal habeas proceedings to engage in discovery.

> Rule 6(a) of the Rules Governing Section 2254 Cases requires a habeas petitioner to show good cause before he is afforded an opportunity for discovery. . . . Bracy v. Gramley, 520 U.S. 899, 117 S.Ct. 1793, 1799, 138 L.Ed.2d 97 (1997). Good cause is shown if the petitioner makes a specific allegation that shows reason to believe that the petitioner may be able to demonstrate that he is entitled to relief. Harris v. Nelson, 394 U.S. 286, 300, 89 S.Ct. 1082, 22 L.Ed.2d 281 (1969); Bracy, 117 S.Ct. at 1799 (approving the Harris standard).

Quesinberry v. Taylor, 162 F.3d 273, 279 (4th Cir. 1998). In addition, it follows that there is no point allowing discovery if there will not be a hearing at which to present the evidence. Lawson v. Dixon, 3 F.3d 743, 753 (4th Cir. 1993).

In the instant case, the standard governing a court's discretion to grant a hearing is found in "the Antiterrorism and Effect [sic] Death Penalty Act (AEDPA) of 1996, Pub.L. No. 104-132, 110 Stat. 1414 (1996). Where AEDPA applies, the standard is articulated in 28 U.S.C. § 2254(e)(2)." Kelley v. Secretary for Dept. of Corrections, 377 F.3d 1317, 1333-37 (11th Cir. 2004)(setting out the history and development of the pre- and post-AEDPA standards). The first threshold is that a hearing may not be

granted if petitioner failed to develop his claim in state court.[4] Fullwood v. Lee, 290 F.3d 663, 681 (4th Cir. 2002)(citing the test set out in Williams v. Taylor, 529 U.S. 420 (2000)(lack of diligence or some greater fault)). Diligence requires that the petitioner make some reasonable attempt to take the steps necessary to receive a hearing. Getsy v. Mitchell, 456 F.3d 575, 595 (6th Cir. 2006)(citing Williams v. Taylor, supra).

Next, the alleged facts must, if true, entitle petitioner to relief. Fullwood, supra. Finally,

> petitioner must establish one of the six factors set forth in Townsend v. Sain, 372 U.S. 293, 312, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963).[FN7] . . .
>
> FN7. The six Townsend factors are:
>
> (1) the merits of the factual dispute were not resolved in the state hearing; (2) the state factual determination is not fairly supported by the record as a whole; (3) the fact-finding procedure employed by the state court was not adequate to afford a full and fair hearing; (4) there is a substantial allegation of newly discovered evidence; (5) the material facts were not adequately developed at the state-court hearing; or (6) for any reason it

---

[4] With respect to evidence not presented to the state trial court, there is a possibility that such evidence can be used to evaluate the prosecutor's reasons if it were subsequently placed in the record without objection. In Miller-El, such evidence consisted of jury questionnaires. The dissent in Miller-El would have excluded that evidence because it could have been developed and presented at the state court level at the Batson hearing and, therefore, should have been excluded from use in federal court by 28 U.S.C. § 2254(e)(2). Miller-El, 125 S.Ct. 2348 (Thomas, J., dissent). The majority did not directly discuss that issue, except in a footnote which could be read as considering the questionnaires a part of the record in the federal district court because no one objected to the receipt of that supplemental material, even though the claim based on this evidence was never presented to the state trial judge. Id. at 2335 n.15.

-7-

>           appears that the state trier of fact did not
>           afford the habeas applicant a full and fair
>           fact hearing.
>
>      372 U.S. at 313, 83 S.Ct. 745.

Fullwood, 290 F.3d at 681.

In other words, in order to allow discovery in the instant case, the Court must find the facts sought would likely entitle petitioner to relief and that petitioner has sufficiently made an attempt to receive a hearing concerning these facts in state court. The Court will now examine the record in the state court in order to determine what matters would be within the proper scope of an evidentiary hearing.

The first Batson challenge occurred not far into the voir dire. (Jury Select. Tr. Vol. I at 121.) At that time, petitioner objected that the prosecution challenged three minority members, two blacks and one oriental, for cause. Those challenges are not part of the matter under consideration. He also objected that three blacks were challenged peremptorily. At the Batson hearing, the prosecutor gave the following reasons for his peremptory challenges. Mrs. Randelman was challenged because she did not reveal she had a worthless check and two speeding violations, and she was hesitant on death penalty questions. Ms. Jinwright was excused because she had a three- or four-year-old child and was hesitant on the death penalty, and Ms. Massey allegedly because she had hearing problems. (Id. at 124.) Petitioner had apparently previously made a motion for the juror's criminal record used by

-8-

the prosecutor, which had been denied and was again denied at a later point in the <u>voir</u> <u>dire</u>. (Jury Select. Tr. Vol. III at 599.)

As noted above, with respect to the criminal records, petitioner had previously sought the criminal records which the State relied on to explain its reasons for excusing jurors. Thus, he made a sufficient attempt to make the records a part of the <u>Batson</u> hearing. The information could entitle petitioner to relief for the following reasons. If the State discriminatorily used those records by only collecting or using the criminal convictions of blacks, as opposed to whites, this would serve to establish discriminatory intent in jury selection. Therefore, petitioner's request concerning the criminal records relied on by the prosecutor to exercise peremptory challenges was and is a proper subject of discovery. Furthermore, to the extent that those exact records do no longer exist, then petitioner may attempt to reconstruct those records by examining the prosecutor's notes and any other written material used during jury selection.

As a further part of the <u>Batson</u> proceeding on these three jurors, petitioner also introduced evidence in the following form:

> Your Honor, please, and we would submit that there is a cause or design. We further submit, Your Honor, please of an evidentiary nature, in my ten years of practice, Your Honor, please, it has not been my experience that he has left a single minority member on the jury that he has picked.

(Jury Select. Tr. Vol. I at 123.) This evidentiary submission was not addressed either by the prosecution or the court.

<u>Miller-El</u> makes clear that historical evidence of discrimination can be a proper subject of consideration. In that

case, evidence in the form of a jury selection manual encouraging or mandating discriminatory jury selection was deemed an important part of the consideration of the Batson challenge. Miller-El, 125 S.Ct. 2338. In the instant case, the defense attorney stated that in his experience in trials with Prosecutor Yates, the prosecutor had never seated a minority member. This evidence was not rebutted in any fashion. It became part of the evidence.

As part of discovery, petitioner seeks to review all previous peremptory challenges made by both prosecutors which have been subject to a Batson challenge, all lectures presented or articles written by the prosecutors, and any training material provided by the District Attorney's Office. The Court finds these requests to be too broad, in that no presentation was made to the state court concerning any of these items. Petitioner's attorney, Mr. Bell, only introduced evidence that, in his experience with Mr. Yates, Mr. Yates had not accepted even one black juror. Because this relevant issue was fully presented to the state court, but ignored, it is a proper subject of further discovery and hearing. Robinson v. Polk, 438 F.3d 350, 370 (4th Cir. 2006)(Section 2254(e)(2) does not apply when a petitioner was diligent in pursuing the hearing of a claim in state court -- only the Townsend v. Sain, supra, factors apply). The trial court did not address this evidence and, thus, it is a proper subject of a federal hearing. That is, petitioner, or respondent, may examine the prior record of state cases involving both Mr. Yates and Mr. Bell to determine the patterns, if any, of Mr. Yates in peremptorily excluding black jurors. The

-10-

parties may likely start with having Mr. Bell identify those proceedings to which he referred during the voir dire.

The next Batson challenge involves jurors Rawlinson and McClure. (Jury Select. Tr. Vol. I at 159.) As to them, the prosecutor defended excusing them on the grounds that neither had a strong opinion for or against the death penalty and, in addition, Mr. McClure was nodding off. The prosecutor also added that he discussed the panel with the High Point Police Department and they indicated Mr. McClure and Ms. Rawlinson would not be good jurors for this type of case. As noted by the Fourth Circuit, prosecutors can certainly solicit help from the police, but it would be highly unlikely that the police could advise prosecutors concerning the jurors' stance on the death penalty. Kandies v. Polk, 385 F.3d at 475-476. The state court directed the prosecutor to elaborate on the issue of why the High Point Police Department did not feel they would be good jurors. The prosecutor failed to give any explanation as to why the police would have a basis for offering an opinion and the court did not require further explanation. It should be noted that this reason given by the prosecutor would have to arise from pretrial contact evidence, not evidence developed at the voir dire hearing. It may be that respondent would wish to further develop this information to remove the suspicion arising from a prosecutor's use of questionable extra-judicial information as an explanation for a Batson challenge. However, because petitioner did not make a request to have such information developed at the voir dire hearing, and because neither petitioner

nor respondent has sought discovery on this matter, the Court will not take any action at this time.

The next Batson challenge involved three jurors and the reasons given by the prosecutor to excuse them was, again, record checks: (1) Mr. Campbell (Jury Select. Tr. Vol. III at 576), Mr. Hines (Jury Select. Tr. Vol. III at 598), and Mr. Wilson (Jury Select. Tr. Vol. IV at 745). For the reasons previously stated, the Court will grant petitioner's motion with respect to obtaining the criminal records which were used by the prosecutor to screen the jurors.

Finally, petitioner requests the jury questionnaires used by both prosecutors in this case. He seeks to examine the questionnaires to see if notations of race were placed by the jurors. In Miller-El, such material was relevant because the voir dire occurred prior to Batson and there would have been no reason to mark a juror's race. Miller-El, 125 S.Ct. at 2339. Post-Batson, the questionnaires would not be nearly so relevant because keeping track of a juror's race may be necessary to make sure that a disproportionate number of any group is not peremptorily excused. More importantly, as noted previously, discovery will only be granted with respect to issues which petitioner attempted to raise or were actually raised during the Batson hearing. The prosecutor's jury questionnaires were not sought at the Batson hearing. Were the Court to grant discovery as petitioner requests, it would inject a whole new basis for a claim never presented to the state court; and, further, to do so would dramatically alter a

-12-

Case 1:99-cv-00764-WO-JLW   Document 63   Filed 10/02/06   Page 12 of 13

nor respondent has sought discovery on this matter, the Court will not take any action at this time.

The next Batson challenge involved three jurors and the reasons given by the prosecutor to excuse them was, again, record checks: (1) Mr. Campbell (Jury Select. Tr. Vol. III at 576), Mr. Hines (Jury Select. Tr. Vol. III at 598), and Mr. Wilson (Jury Select. Tr. Vol. IV at 745). For the reasons previously stated, the Court will grant petitioner's motion with respect to obtaining the criminal records which were used by the prosecutor to screen the jurors.

Finally, petitioner requests the jury questionnaires used by both prosecutors in this case. He seeks to examine the questionnaires to see if notations of race were placed by the jurors. In Miller-El, such material was relevant because the voir dire occurred prior to Batson and there would have been no reason to mark a juror's race. Miller-El, 125 S.Ct. at 2339. Post-Batson, the questionnaires would not be nearly so relevant because keeping track of a juror's race may be necessary to make sure that a disproportionate number of any group is not peremptorily excused. More importantly, as noted previously, discovery will only be granted with respect to issues which petitioner attempted to raise or were actually raised during the Batson hearing. The prosecutor's jury questionnaires were not sought at the Batson hearing. Were the Court to grant discovery as petitioner requests, it would inject a whole new basis for a claim never presented to the state court; and, further, to do so would dramatically alter a

federal court's involvement in state court proceedings and permit what would amount to a trial de novo concerning the Batson issue.[5] Such involvement should be avoided if possible because, if a defendant is relieved from responsibility for developing or attempting to develop the record at the State Batson hearing, it would permit, if not encourage, gaming and sandbagging on the behalf of defense counsel. See Billings v. Polk, 441 F.3d 238, 245-46 (4th Cir. 2006). That is, there would be no incentive to develop the record if it could be done at a later date. In fact, having the trial court make an error would be beneficial to defendant when it would mean a new trial if the verdict was unfavorable.

**IT IS THEREFORE ORDERED** that petitioner's motion for discovery (docket no. 50) is granted in part and denied in part. The motion is granted with respect to discovery of the criminal record checks run on members of the jury venire and the issue of Mr. Yates' exercise of peremptory challenges in his cases with Mr. Bell. The motion is denied with respect to all other requests.

**IT IS FURTHER ORDERED** that the parties will, within twenty days, present the Court with a discovery timetable so it will know when discovery has ended.

/s/ Russell A. Eliason
**United States Magistrate Judge**

October 2, 2006

---

[5]Petitioner does not show that the jury questionnaires have somehow become a part of the state court or federal court review process. See n.4, supra.