IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| JEFFREY CLAYTON KANDIES | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | FILE NO. 1:99CV00764 |
| | ) | |
| KEITH LASSITER, Warden, | ) | |
| Central Prison | ) | |
| Raleigh, North Carolina, | ) | |
| | ) | |
| Respondent. | ) | |

**SUPPLEMENTAL BRIEF
REGARDING THE EFFECTS OF
CULLEN V. PINHOLSTER, __ U.S. __, 131 S. CT. 1388 (2011),
ON THIS COURT'S REVIEW OF THE
MAGISTRATE JUDGE'S RECOMMENDATION
TO DENY THE WRIT OF HABEAS CORPUS
Local Rule 7.3
28 U.S.C. § 2254**

NOW COMES THE RESPONDENT, by and through his undersigned counsel, providing the following supplemental arguments as ordered by the Court, addressing the effects of the United States Supreme Court decision in Cullen v. Pinholster, ___ U.S. ___, 131 S. Ct. 1388 (2011), on this Court's review of the Magistrate Judge's Recommendation to deny the writ of habeas corpus.

**Procedural History and Pertinent Facts**

At the direction of the Court, Respondent dispenses with a full recitation of the long and tortured procedural history of the present case. Briefly and pertinent to the issues addressed by this Supplement Brief, Petitioner was convicted of the first-degree murder and first-degree rape of four-year-old Natalie Osborne. Petitioner was sentenced to death, and the North Carolina Supreme Court affirmed Petitioner's conviction and sentence. See State v. Kandies, 342 N.C. 419, 467 S.E.2d 67,

cert. denied, 519 U.S. 894 (1996). Petitioner's case proceeded through state and federal post-conviction review. The United States Supreme Court granted Petitioner's certiorari petition filed in that court following state and federal post-conviction review, and remanded the case to the United States Court of Appeals for the Fourth Circuit for consideration in light of Miller-El v. Dretke, 545 U.S. 231 (2005) (Miller-El II), which further remanded the case to this Court. See Kandies v. Polk, 545 U.S. 1137 (2005). The Magistrate Judge allowed the parties to supplement the case record with evidence that was not submitted to the state court; considered that evidence; and on April 5, 2011, issued a Recommendation that Petitioner's petition for writ of habeas corpus be denied. (Docket No. 124) One day prior to the issuance of the Recommendation, but apparently not in time to inform the Magistrate Judge's decision, the United States Supreme Court held in Cullen v. Pinholster, __ U.S. __, __, 131 S. Ct. 1388, 1398 (2011), that federal habeas review "is limited to the record that was before the state court that adjudicated the claim on the merits." Petitioner has objected to the Magistrate Judge's Recommendation, and Respondent has responded to those Objections.

## Legal Argument

**Petitioner's petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 should be denied without an evidentiary hearing and without consideration of any evidence not in the state-court record.**

This case is now before the Court for it to conduct a de novo review of those portions of the Magistrate Judge's Recommendation to which Petitioner objected, and in so doing, to determine whether to "accept, reject, or modify, in whole or in part, the findings or recommendation . . . or [to] recommit the matter to the magistrate judge with instructions." 28 U.S.C. § 636(b)(1). This Court should adopt the Magistrate Judge's ultimate recommendation to deny the habeas writ, but should modify those portions of the Recommendation in which the Magistrate Judge considered evidence submitted for the first time in federal court.

   **1.    The Supreme Court's decision in Cullen v. Pinholster precludes this Court from considering evidence not submitted to the state court.**

In Cullen v. Pinholster, __ U.S. at __, 131 S. Ct. at 1398, the United States Supreme Court held that "review under [28 U.S.C. ]§ 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." As such, "[i]f a claim has been adjudicated on the merits by a state court, a federal habeas petitioner must overcome the limitation of § 2254(d)(1) on the record that was before the state court." Id. at 1400. It follows that, "a federal court is precluded from supplementing the record with facts adduced for the first time at a federal evidentiary hearing." Jackson v. Kelly, 650 F.3d 477, 492 (4th Cir. 2011).

In Jackson v. Kelly, 650 F.3d. 477, the district court held an evidentiary hearing based upon an ineffective assistance of counsel claim prior to the United States Supreme Court issuing its opinion in Pinholster. Jackson, 650 F.3d at 485. By the time the case reached the Fourth Circuit, Pinholster was published. Thus, in light of Pinholster, the Fourth Circuit in Jackson considered the petitioner's habeas claims under the appropriate standards based solely on the state-court record and without regard to any facts adduced in federal court. Jackson, 650 F.3d at 492.

In a case procedurally similar to Jackson, Burr v. Branker, _ F. Supp. 3d ___, ___, 2012 U.S. Dist. LEXIS 74315 (M.D.N.C. May 30, 2012) (No. 1:01CV393), appeal pending, No. 12-4 (4th Cir. filed June 20, 2012), this Court followed the holding of Jackson. In Burr, the Magistrate Judge, without the benefit of Pinholster, granted the State's motion to expand the record and for discovery, and considered evidence gathered during the federal court proceeding in issuing his recommendation. Burr, _ F. Supp. 3d at ___, 2012 U.S. Dist. LEXIS 74315, at *8. After Pinholster was issued, this Court adopted the recommendation of the Magistrate Judge in Burr upon de novo review, but did so considering only that evidence presented in state court. Burr, _ F. Supp. 3d at ___, 2012 U.S. Dist. LEXIS 74315, at *8-*9.

In the present case, this Court is bound by Pinholster, as was the Fourth Circuit in Jackson, and this Court in Burr, to conduct a de novo review of Petitioner's case without regard to the

evidence presented in federal court. As this Court recognized regarding the case of the petitioner in Burr,

> [l]ike the Fourth Circuit in Jackson, . . . the Magistrate Judge in this case "did not have the benefit of Cullen's guidance" when it granted the [parties'] motion[s] to expand the record and to conduct discovery. Jackson, 650 F.3d at 492. Consequently, the Magistrate Judge's "reliance on material developed [before the federal court] was at odds with [the] AEDPA's placement of primary responsibility [for habeas review] with the state courts," albeit unknowingly. Id. (internal quotation marks omitted) (citing Pinholster, 131 S. Ct. at 1399). Because this court now has the benefit of Pinholster, like the Fourth Circuit in Jackson, this court [should be] "[m]indful that evidence introduced in a federal court has no bearing on § 2254(d)(1) review." Jackson, 650 F.3d at 492 (internal quotation marks omitted). Consequently, this court [should] "proceed[] to assess [Kandies] petition on the basis of the facts contained in the state-court record." Id.

Burr, __ F. Supp. 3d at ___, 2012 U.S. Dist. LEXIS 74315, at *8-*9 (most alterations in original).

Notably, the Fourth Circuit has emphasized that, for Pinholster to apply, the state court must have previously adjudicated the merits of the claim presented for federal habeas review. In Winston v. Kelly, 592 F.3d 535 (4th Cir.) (Winston I), cert. denied, ___ U.S. ___, 131 S. Ct. 127 (2010), the Fourth Circuit concluded that the petitioner was permitted to introduce new evidence in federal court to support one of his habeas claims. Id. at 555. This was because the state court did not adjudicate the claim; the standard dictated by § 2254(d)(1) did not apply; and thus, the federal court could consider new evidence. Id. at 555. The court reasoned that, although the petitioner raised the claim in state court, the state court's adjudication thereof was not an actual "adjudication on the merits" as defined by § 2254(d)(1), because the evidence the petitioner introduced in federal court was material; the state court had not "permitted further development of the facts," which would have allowed for the submission of the material evidence in state court; and thus, the state-court record was "materially incomplete." Id. at 555-56.

The United States Supreme Court ruling in Pinholster was issued after the Fourth Circuit's

decision in Winston I. It could have been argued after Pinholster, that the United States Supreme Court in essence overruled the principles espoused in Winston I, or at the very least, called the analysis therein into question. However, in Winston v. Pearson, 683 F.3d 489 (4th Cir. 2012) (Winston II), cert. denied, 2013 U.S. LEXIS 1631 (Feb. 25, 2013), the Fourth Circuit concluded that "nothing in Pinholster indicates that the [Supreme Court's] disposition casts doubt on-much less overrules-our discussion of the adjudicated-on-the-merits requirement in Winston I." Winston II, 683 F.3d at 501-02. In Winston II, the circuit court maintained that § 2254(d) did not apply to the case before it, even in light of Pinholster, because it was law of the case as established in Winston I, and because Pinholster only applied where there had been an adjudication on the merits in state court. Winston II, 683 F.3d at 501-03. The state court's "unreasonable denial of the [Winston petitioner's] requests for discovery and an evidentiary hearing, . . . combined with the material nature of the evidence that would have been produced in state court were appropriate procedures followed," rendered "[the state court's] decision unbefitting of classification as an adjudication on the merits." Winston II, 683 F.3d at 502.

   Here, there is no question that the state trial court and the state supreme court adjudicated Petitioner's claims brought pursuant to Batson v. Kentucky, 476 U.S. 79(1986). See Kandies, 342 N.C. at 434-37, 467 S.E.2d at 75-76. In addressing the Batson challenges during jury selection, the North Carolina Superior Court did not unreasonably deny, or fail to follow proper procedures in denying, Petitioner's request for discovery or disclosures that would have allowed him to expand the state-court record to include such things as any alleged historical evidence of discrimination. As noted by the Magistrate Judge in his Recommendation, if there was such historical evidence, "nothing prevented Petitioner from submitting the evidence to the trial court prior to trial and seeking

-5-

discovery at that point, or even from presenting any evidence he had on this issue at the Batson hearing during trial." (Docket No. 124 at 15) In fact, "Petitioner has never asserted that he was denied the opportunity to present such historical evidence in the trial court." (Id.)

The North Carolina Superior Court did deny Petitioner's request for disclosure of criminal records possessed by the State that the prosecution used to challenge four African-American jurors. However, as found by the North Carolina Supreme Court in the present case, the Superior Court's denial of Petitioner's request was proper under North Carolina statutory law. See State v. Kandies, 342 N.C. at 437-38, 467 S.E.2d at 77. And, as the Magistrate Judge duly recognized in his Recommendation, this Court is prohibited from reexamining the North Carolina Supreme Court's determination of this, a state-law issue. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). Because the North Carolina courts were not "unreasonable" in denying Petitioner's request for the State's files and, moreover, followed "appropriate procedures" in doing so, the North Carolina Supreme Court's denial of Petitioner's Batson claims is undoubtedly "[]befitting of classification as an adjudication on the merits."[1]  Winston II, 683 F.3d at 502. It follows that this Court must not consider the evidence submitted by the parties that was not presented to the state courts, and Petitioner is not entitled to any evidentiary hearing at which he can submit even more evidence which cannot be considered.[2]  See Jackson, 650 F.3d at 492.

---

[1] It is also worth nothing that nothing prevented Petitioner from gathering the African-American jurors' and white jurors' criminal records for comparison and to attempt to rebut the State's reasons for the strikes at the time of jury selection.

[2] Notably, in Pinholster, the United Supreme Court rejected the argument that its application of § 2254(d) in that case would bar all federal evidentiary hearings, thus rendering the statutory requirements for holding a federal evidentiary hearing contained in 28 U.S.C. § 2254(e)(2) purposeless. Pinholster,    U.S. at   , 131 S. Ct. at 1401. The high court noted that the requirements of § 2254(e)(2) still had "force where § 2254(d)(1) does not bar federal habeas relief." Id. One

## 2. Under the highly deferential standard governing this Court's review, Petitioner is not entitled to relief on his <u>Batson</u> claim.

Where, as here, the state court has adjudicated the habeas corpus claim at issue on the merits, this Court may grant relief only if the state-court adjudication on the merits, even in a summary or unexplained order, "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of facts, in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1) and (d)(2); <u>see also</u> Harrington v. Richter, \_\_\_ U.S. \_\_\_, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011). The above standard for reviewing the state court's decision is highly deferential. The Harrington opinion includes the following guidance and mandates:

> [a.] For purposes of § 2254(d)(1), "an unreasonable application of federal law is different from an incorrect application of federal law." []
>
> [b.] A state court's determination that a claim lacks merit precludes federal habeas relief so long as "fairminded jurists could disagree" on the correctness of the state court's decision. [] ...
>
> [c.] [A] habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court. ...
>
> [d.] It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable. []
>
> [e.] If this standard is difficult to meet, that is because it was meant to be. [AEDPA] preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther. ... As a condition for obtaining habeas corpus

---

example would be where there was no adjudication on the merits in state court. <u>Id.</u>

-7-

from a federal court, a state prisoner must show that the state court's ruling ... was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

The reasons for this approach are familiar. "Federal habeas review of state convictions frustrates both the States' sovereign power to punish offenders and their good-faith attempts to honor constitutional rights." [] It "disturbs the State's significant interest in repose for concluded litigation, denies society the right to punish some admitted offenders, and intrudes on state sovereignty to a degree matched by few exercises of federal judicial authority." []...

[f.] Section 2254(d) is part of the basic structure of federal habeas jurisdiction, designed to confirm that state courts are the principal forum for asserting constitutional challenges to state convictions.

Harrington, U.S. at , 131 S. Ct. at 786-88.

For the reasons submitted by Respondent in its prior filings in this Court, and especially in light of Harrington and Pinholster, Petitioner cannot prevail on his Batson claim. This is because there is no question that "fair minded jurists" could disagree, or for that matter agree, with the correctness of the state court decision, based on the record before the state court. See Harrington supra; see also Bell v. Cone, 543 U.S. 447, 455, 1255 S. Ct. 847, 160 L. Ed. 2d 881 (2005) (federal habeas statute "dictates a highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt").

**3.  The North Carolina Supreme Court's decision rejecting Petitioner's Batson claim is not contrary to or an unreasonable application of Batson, even when considering the United States Supreme Court's decision in Miller-El II.**

As the Fourth Circuit has recognized, "Miller-El II did not alter Batson claims in any way." Golphin v. Branker, 519 F.3d 168, 186 (4th Cir.), cert. denied, 555 U.S. 975 (2008). In fact, the high court could not have altered the Batson analysis. Rather, it was obligated to follow the clearly established law because Miller-El II was a case on federal habeas review. See Golphin, 519 F.3d

at 186.  It follows that the Batson three-step process, applied by the North Carolina Supreme Court in Petitioner's case, still governs claims that there was an equal protection violation in jury selection.

The North Carolina Supreme Court's adjudication of Petitioner's claim under the three-step process was not contrary to or an unreasonable application of relevant United States Supreme Court case law, even in light of the decision in Miller-El II.  As noted above, Miller-El II did not fundamentally change the relevant legal analysis.  The only thing the Miller-El II decision did regarding analysis of Batson claims was simply to emphasize that certain forms of evidence were not to be disregarded when a Batson claim is analyzed.  Murphy v. Dretke, 416 F.3d 427, 439 (5th Cir. 2005) (concluding that in Miller-El II, "[t]he Court did not announce any new elements or criteria for determining a Batson claim, but rather simply made a final factual and evidentiary determination of that particular petitioner's Batson claim").  As detailed below, the North Carolina state courts have not disregarded the forms of evidence Miller-El II emphasized were important in the Batson analysis.

Moreover, for the reasons stated above, the Supreme Court's decision in Pinholster makes it clear that such evidence must be derived from the existing state court record where, as here, the relevant federal habeas claim was adjudicated on its merits in state court. Petitioners bringing Batson claims are not excused from following the governing principles of Pinholster.  There can be no different conclusion derived from the United States Supreme Court's remand in the present case. The remand gave no direction to the Fourth Circuit or this Court that they were somehow required to consider evidence outside of the state-court record when reviewing Petitioner's Batson claim.  In fact, the present case was one of many in what appears to have been a blanket remand of cases following the decisions in Miller-El I and Miller-El II.  See, e.g., Barnette v. United States, 546 U.S.

803 (2005); Snyder v. Louisiana, 545 U.S. 1137 (2005); Hightower v. Schofield, 545 U.S. 1124 (2005); Coulter v. Illinois, 537 U.S. 1230 (2003).

As note above, in Miller-El II the United States Supreme Court emphasized certain pieces of evidence that could provide a factual basis for establishing discriminatory intent in the Batson analysis. For instance, the Court pointed to evidence relating to the side-by-side comparisons of struck African-American jurors with similarly situated white jurors who were allowed to serve. Miller-El II, 545 U.S. at 241. In so doing, the Supreme Court noted that "[i]f a prosecutor's proffered reason for striking a black panelist applies just as well to an otherwise-similar nonblack who is permitted to serve, that is evidence tending to prove purposeful discrimination to be considered at Batson's third step." Id. In so doing, the Supreme Court emphasized that it had never announced "a rule that no comparison is probative unless the situation of the individuals compared is identical in all respects, and there is no reason to accept one." Id. at 247 n.6. The Court went on to note that "[a] per se rule that a defendant cannot win a Batson claim unless there is an exactly identical white juror would leave Batson inoperable; potential jurors are not products of a set of cookie cutters." Miller-El II, 545 U.S. at 247 n.6

Petitioner has previously argued in this Court that the North Carolina Supreme Court's analysis of his Batson claim is contrary to or an unreasonable application of the above-noted language from Miller-El II. In so doing, Petitioner points to the following passage from the North Carolina Supreme Court's opinion in his case:

> Defendant's approach "involves finding a single factor among the several articulated by the prosecutor . . . and matching it to a passed juror who exhibited that same factor." We have rejected this approach and do so again because it "fails to address the factors as a totality which when considered together provide an image of a juror considered . . . undesirable by the State." We conclude that the trial court did not err

-10-

> in overruling defendant's objection to the State's use of its peremptory challenges for these jurors.

Kandies, 342 N.C. at 435-36, 467 S.E.2d at 75-76 (emphasis added) (citations omitted). The above noted portion of the North Carolina Supreme Court's opinion does not evince reasoning that contravenes the United States Supreme Court's analysis in Miller-El II. Despite Petitioner's argument to the contrary, the North Carolina Supreme Court was not disregarding comparative juror analysis or imposing a per se rule against it. In fact, the North Carolina Supreme Court noted in Kandies that in determining "the presence or absence of intentional discrimination," our state courts look at, among other things, "whether similarly situated whites were accepted as jurors." Kandies, 342 N.C. at 435, 467 S.E.2d at 75; see also State v. Robinson, 336 N.C. 78, 19, 443 S.E.2d 306, 298 (1994) (same), cert. denied, 513 U.S. 1089 (1995). Compare United States v. Barnette, 644 F.3d 192, 205 (4th Cir. 2011) (recognizing that, prior to Miller-El II, the circuit court had an actual rule that "comparative juror analysis was not a critical element of a Batson claim"). Nor was the state court requiring that the prospective jurors be "a set of cookie cutters" as part and parcel of the comparative analysis. Miller-El II 545 U.S. at 247 n.6. In Miller-El II, the United States Supreme Court did not prohibit what the North Carolina Supreme Court was requiring--an examination of not just one reason but all the reasons articulated by the prosecutor in striking a prospective juror, as some of the other reasons for a strike might render a prospective juror highly unfavorable to the state. In fact, the United States Supreme Court instructed in Miller-El I that "the credibility of reasons given can be measured by 'how reasonable, or how improbable, the explanations are; and by whether the proffered rationale has some basis in accepted trial strategy." Miller-El I, 537 U.S. at 339, quoted in Miller-El II, 545 U.S. at 247. It would be illogical, even in light of Miller-El II, to require

a trial court to find a strike pretextual based upon a single characteristic in one prospective juror that is unfavorable to the state's trial strategy, when that characteristic is exhibited by another prospective juror, but it is outweighed by ones that are more favorable to the state.

In Nicklasson v. Roper, 491 F.3d 830 (8th Cir. 2007), cert. denied, 553 U.S. 1007 (2008), the Eighth Circuit rejected an argument regarding comparative juror analysis similar to the one Petitioner presents in the instant case. In Nicklasson, the petitioner argued that the peremptory strike of two African-American jurors was racially motivated and thus violated Batson. Nicklasson, 491 F.3d at 841. Citing that portion of Miller-El II concerning comparative juror analysis noted above, the Nicklasson petitioner argued that the reasons for the strikes applied equally to non-African-American jurors. Nicklasson, 491 F.3d at 841. The state countered that there were other, relevant differences between the African-American and non-African-American jurors. Id. In response, the petitioner contended that accepting the state's argument would impose a per se rule prohibited by Miller-El II. Nicklasson, 491 F.3d at 841.

The Eighth Circuit rejected the Nicklasson petitioner's argument. The court began by acknowledging that Miller-El II barred courts from adopting a per se rule against comparative juror analysis. However, the circuit court went on to note that the Miller-El II opinion "provides that 'the credibility of the reasons given by the prosecution may be measured by how reasonable, or how improbable, the explanations are; and by whether the proffered rationale has some basis in accepted trial strategy,'" and that "[t]his approach accounts for the nature and extent of the differences." Nicklasson, 491 F.3d at 841 (citing Miller-El II, 545 U.S. at 339). Specifically regarding the arguments of the Nicklasson petitioner, the Eighth Circuit held as follows,

Nicklasson's reliance on Miller-El does not bolster his argument because the

-12-

> Supreme Court's finding of a Batson violation did not hinge entirely on the closeness of the excluded black juror's testimony to that of the white, but on the "totality of the relevant facts" pertaining to the prosecutor's conduct during the defendant's trial. Miller-El, 545 U.S. at 239. Nicklasson does not offer similarly compelling "totality of the record" evidence and instead relies entirely upon allegedly inconsistent treatment of jurors who gave similar responses. Although the inconsistent application of a prosecutor's peremptory challenge rationale between similarly situated white and black jurors constitutes evidence of purposeful discrimination, see id. at 241, there is not, nor should there be, a per se rule stating that the presence of such evidence alone must always constitute "clear and convincing" evidence sufficient to satisfy Nicklasson's burden no matter its strength.

Nicklasson, 461 F.3d at 842-43 (footnotes omitted).

The reason that the North Carolina Supreme Court rejected Petitioner's comparative juror analysis is similar to the reason the Eighth Circuit rejected the petitioner's argument in Nicklasson. As the North Carolina Supreme Court's rejection of Petitioner's comparative-juror argument indicated, here, by focusing on one factor or reason for certain strikes, rather than considering all of them, Petitioner's analysis did not account for the nature and extent of the differences between the prospective jurors. As such, similar to the state court in Nicklasson, the North Carolina Supreme Court's reasoning in rejecting Petitioner's comparative juror analysis argument was not, as Petitioner contends, contrary to or an unreasonable application of Miller-El II.

In addition to emphasizing the importance of comparative juror analysis, the United States Supreme Court in Miller-El II undertook a detailed analysis of the prosecution's disparate questioning of prospective jurors to discern whether there was discriminatory intent in the use of peremptory strikes. Miller-El II, 545 U.S. at 243-52 & 255-61. It is notable that even prior to the Miller-El opinions, the North Carolina state courts looked at the questions asked by prosecutors in determining whether there was the presence or absence of intentional discrimination. See Kandies, 342 N.C. at 435, 467 S.E.2d at 75.

-13-

In <u>Miller-El II</u>, the Supreme Court compared the questioning of certain African-American jurors with that of certain prospective white jurors. Specifically, the Court contrasted the content of the prosecution's descriptions of capital punishment when questioning African-American jurors to the description given to white jurors when they were questioned. <u>Id.</u> at 255. According to the Supreme Court, the description of capital punishment in questions to a majority of African-American jurors followed "the so-called graphic script, describing the method of execution in rhetorical and clinical detail." <u>Id.</u> The "graphic script questions," were intended, the <u>Miller-El</u> petitioner argued, "to prompt some expression of hesitation to consider the death penalty and thus to elicit plausibly neutral grounds for a peremptory strike of a potential juror subjected to it, if not a strike for cause." <u>Id.</u> In contrast, the description of capital punishment in questions to prospective white jurors were what the Supreme Court characterized as "bland," as an effort to apparently elicit little or no hesitation. <u>Id.</u> The Court further pointed to another type of disparate questioning by the prosecution involving sentencing terms, which the Court noted could "fairly be called trickery." <u>Id.</u> at 261.

The prosecution in <u>Miller-El II</u> admitted that there was disparate questioning and questions to trick jurors, but argued that they were employed based upon factors other than race. <u>Id.</u> at 253-54. The Supreme Court disagreed citing not only the content of the questions and the statistical disparity between the questions asked of African-Americans and those asks of whites, but also the other evidence of discriminatory intent. <u>Id.</u> Supporting the Supreme Court's conclusion that the <u>Miller-El</u> prosecutions' disparate questioning and other actions were racially motivated was the fact that "for decades leading up to the time [Miller-El's] case was tried prosecutors in the Dallas County office had followed a specific policy of systemically excluding blacks from juries" and even had a manual which contained an article "outlining the reasoning for excluding minorities from jury service." <u>Id.</u>

at 263-64. Moreover, the Court believed that the Miller-El prosecutors had manipulated a Texas jury selection procedure known commonly as "shuffling" in a way that made "no sense except as [an effort] to delay consideration of black jury panelist to the end of the week, when they might not even be reached." Id. at 265. According to the United States Supreme Court, in Miller-El's case,

> [t]he prosecutors' chosen race-neutral reasons for the strikes do not hold up and are so far at odds with the evidence that pretext is the fair conclusion, indicating the very discrimination the explanations were meant to deny.
>
> The strikes that drew these incredible explanations occurred in a selection process replete with evidence that the prosecutors were selecting and rejecting potential jurors because of race.

Id. at 265-66.

The evidence Petitioner points to in this case as allegedly establishing intentional discretion simply does not demonstrate the existence of such and, in any regard, does not evince the state-court's decision that was contrary to or an unreasonable application of Batson, Miller-El II, or any other relevant United States Supreme Court precedent. Despite Petitioner's argument to the contrary, there was no disparate questioning based upon race, and certainly nothing that can be characterized as trickery, during jury selection at his trial. Petitioner has attempted to argue contrarily that the State used two "scripts" to question jurors, one for African-American jurors indicating to them that they have a duty to impose the death penalty, and one for white jurors indicating to them that they must follow the law. (See, e.g., Docket No. 129 at 26-27) Petitioner has constructed this argument out of whole cloth. There is no discernable, material difference between the alleged lines of questioning on which Petitioner relies. There was no disparate questioning in Petitioner's case. Unlike the prosecution in Miller-El, the State has not admitted that there was disparate questioning.

-15-

There certainly is not the depth of evidence here even comparable to what was identified as racially motivated in Miller-El II. Petitioner does not allege, nor is there evidence in the record to support, that the State blatantly used trickery during jury selection like the prosecution in Miller-El II. Moreover, there is nothing indicating that the prosecution in the present case had a manual on, policy for, or training in systemically excluding African-American jurors as did the prosecution in Miller-El II. In sum, Petitioner's allegations that there was disparate questioning are without merit and lend no support to his argument that the state courts unreasonably applied Batson.

Finally, even if the Court should find that the North Carolina Supreme Court's rejection of Petitioner's Batson claim was somehow based upon flawed reasoning (which it was not), such does not render the state court's decision reversible in this proceeding. As the Fourth Circuit has previously stated, "[i]n assessing the reasonableness of the state court's application of federal law, the federal courts are to review the result that the state court reached, not whether [its decision] [was] well reasoned." Wilson v. Ozmint, 352 F.3d 847, 855 (4th Cir. 2003) (citations and internal quotation marks omitted) (second alteration in original), as amended, 357 F.3d 461 (4th Cir.), cert. denied, 542 U.S. 923 (2004); see also Larry v. Branker, 552 F.3d 356, 365 (4th Cir. 2009) (same). The United States Supreme Court decision in Harrington, in which the Court held that even state-court summary adjudications are entitled to deferential review, emphasized that review under § 2254(d) is results based. Harrington, __ U.S. at __, 131 S. Ct. at 784-86.

Here, ultimately, the North Carolina Supreme Court concluded there was no Batson violation in the State's exercise of peremptory strikes during jury selection. For the reasons stated above and previously articulated by Respondent in his filings in this Court, and based upon the analysis by this Court and the Fourth Circuit in previously rejecting Petitioner's Batson claim, the state-court

-16-

adjudication here, regardless of the reasoning, is not contrary or an unreasonable application of Batson. Therefore, pursuant to § 2254(d)(1) and (2), the North Carolina Supreme Court's adjudication of Petitioner's Batson claim should not be overturned on federal habeas review. See Harrington, _ U.S. at _, 131 S. Ct. at 787 (holding that federal courts owe state court adjudications of constitutional claims a high level of deference, that the standards of § 2254(d) and (e) are "difficult to meet," and that they were meant to be so).

It follows that the Court should adopt the Magistrate Judge's Recommendation to deny the writ of habeas corpus. In so doing, the Court should modify the Magistrate Judge's recommended ruling such that the supporting reasoning does not rely on any evidence not submitted in state court.

## Conclusion

For the reasons stated above, Petitioner's petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 should be denied.

Respectfully submitted, this the 5th day of March, 2013.

> ROY COOPER
> ATTORNEY GENERAL
>
> /s/ Mary Carla Hollis
> Mary Carla Hollis
> Assistant Attorney General
> N.C. Bar No. 25731
> Email: mchollis@ncdoj.gov
>
> /s/ Danielle Marquis Elder
> Danielle Marquis Elder
> Special Deputy Attorney General
> N.C. Bar No. 19147
> Email: dmarquis@ncdoj.gov
>
> North Carolina Department of Justice
> Post Office Box 629
> Raleigh, North Carolina 27602
> Telephone: (919) 716-6500
> Facsimile: (919) 716-0001

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| **JEFFREY CLAYTON KANDIES** | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | **FILE NO. 1:99CV00764** |
| | ) | |
| **KEITH LASSITER, Warden,** | ) | |
| Central Prison | ) | |
| Raleigh, North Carolina, | ) | |
| | ) | |
| Respondent. | ) | |

### CERTIFICATE OF SERVICE

I hereby certify that on this day, March 5, 2013, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following ATTORNEYS FOR PETITIONER:

M. GORDON WIDENHOUSE , JR
mgwidenhouse@rwf-law.com, chenry@rwf-law.com, mgwidenhouse@yahoo.com

SHELAGH KENNEY
shelagh@cdpl.org, barrie@cdpl.org

    /s/ Mary Carla Hollis
    Mary Carla Hollis

    /s/ Danielle Marquis Elder
    Danielle Marquis Elder

-19-

Case 1:99-cv-00764-WO-JLW   Document 141   Filed 03/05/13   Page 19 of 19