IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
1:99-CV-00764

| | |
|---|---|
| **JEFFREY CLAYTON KANDIES,** | ) |
| | ) |
| **Petitioner,** | ) |
| | ) |
| v. | ) |
| | ) |
| **KEITH LASSITER, Warden,** | ) |
| | ) |
| **Respondent.** | ) |

_____

### PETITIONER'S SUPPLEMENTAL BRIEF
### AS TO *CULLEN v. PINHOLSTER*

NOW COMES, Jeffrey Clayton Kandies, by and through his undersigned counsel, and provides supplemental briefing as to the effect of *Cullen v. Pinholster*, -- U.S. --, 131 S. Ct. 1388 (2011), on this Court's review of the Magistrate Judge's Recommendation [DE 129].

*Brief Procedural History*

Mr. Kandies is a death-sentenced North Carolina prisoner who is seeking habeas corpus relief from his conviction and sentence. His conviction became final when the Supreme Court of the United States denied his petition for writ of *certiorari* on 7 October 1996. *Kandies v. North Carolina*, 519 U.S. 894 (1996).

One of the federal constitutional claims he raised at trial and pursued on direct appeal involved the discriminatory use of peremptory challenges by the

prosecution in violation of *Batson v. Kentucky*, 476 U.S. 79 (1986). *See State v. Kandies*, 467 S.E.2d 67 (N.C.), *cert. denied*, 519 U.S. 894 (1996). He challenged the state court adjudication of his *Batson* claim in his petition for writ of habeas corpus. [DE 8] The writ was denied. [DE 25] Although the ruling was affirmed, the Supreme Court of the United States vacated and remanded the *Batson* claim for reconsideration. *Kandies v. Polk*, 545 U.S. 1137(2005), *vacating and remanding*, *Kandies v. Polk*, 385 F.3d 457 (4th Cir. 2004). The Fourth Circuit then remanded to this Court. [DE 43]

This Court granted Mr. Kandies' motion for limited discovery regarding the criminal record checks done on the jury venire and the prosecutor's use of peremptory challenges. [DE 63] Mr. Kandies engaged in this discovery. This Court ordered additional discovery on these issues. [DE 79] Mr. Kandies engaged in this discovery. Respondent moved to expand the record. [DE 83, 95] These motions were granted. [DE 101]

Mr. Kandies filed a brief on remand from the Supreme Court of the United States on 8 September 2010. [DE 117] This brief included numerous affidavits and materials containing information not available to Mr. Kandies at the time of his trial or direct appeal, including information gathered pursuant to the Racial Justice Act, which was not passed until 2009.

The magistrate judge again recommended the petition be denied. [DE 124] Mr. Kandies filed objections. [DE 129] Respondent replied to the objections and argued, in part, this Court could not consider any of the facts discovered and developed after the state court proceedings in light of *Cullen v. Pinholster*, 131 S. Ct. 1388 (2011). [DE 130]

On 1 March 2013, Mr. Kandies filed a Motion to Stay and for Abeyance of Federal Proceedings [DE 138], seeking this Court's permission to return to state court to file a second motion for appropriate relief in state court to allow the state courts to consider the evidence gathered through the discovery granted by this Court, through the investigation and litigation that has occurred under the Racial Justice Act, and other information now available to Mr. Kandies that he could not have obtained during the state court proceedings. This motion is pending.

*Legal Argument*

Mr. Kandies' case is in a rare position, which should not go unnoticed by this Court. In several important respects, his case reflects a procedural posture not addressed or apparently even contemplated by *Pinholster*. For example, *Pinholster* did not consider the availability of information obtained in federal court that a petitioner sought in but was denied by the state courts or the emergence of new information after a habeas petition is filed that a petitioner could not have developed. Further, Mr. Kandies' case is complicated. While the *Batson* claim was

3

raised on appeal to the North Carolina Supreme Court, the evidence supporting this claim, as Mr. Kandies acknowledges, has been developed through a variety of discovery procedures and procedural settings. Mr. Kandies addresses each body of evidence supporting his *Batson* claim in turn.

a. *Evidence Presented to State Supreme Court*

In support of his *Batson* claim to the state supreme court, Mr. Kandies offered significant evidence regarding the prosecutor's treatment of similarly-situated prospective jurors. This body of evidence was in the record and clearly presented to the state supreme court. *Pinholster* does not preclude this Court from considering this evidence. Indeed, when evaluating the reasons given by the prosecutor for striking a black prospective juror, the reviewing court should take into account the disparate treatment of similarly-situated prospective jurors. *Miller-El II*, 545 U.S. at 247. Nevertheless, as Mr. Kandies argued in his Objections to Magistrate's Recommendation [DE 129], the state supreme court rejected this evidence concerning similarly-situated jurors and rebuffed his arguments that the prosecutor accepted white venire members who exhibited the same characteristics as black venire members whom the prosecutor struck. *Kandies*, 467 S.E.2d at 75-76. The Recommendation categorically failed to address the state supreme court's wholesale dismissal of this evidence of disparate treatment of similarly-situated

4

prospective jurors. [DE 117 at 4-15 (presentation of evidence regarding state's disparate treatment of similarly-situated prospective jurors)]

Respondent argues in its supplemental brief[1] that the state supreme court did address the similarly-situated evidence presented by Mr. Kandies. [DE 141 at 11-13] But, in addressing the similarly-situated evidence, the state supreme court stated, "Defendant's approach involves finding a single factor among the several articulated by the prosecutor and matching it to a passed juror who exhibited the same factor. We have rejected this approach and do so again because it fails to address the factors as a totality which when considered together provide an image of a juror considered undesirable by the State." *Kandies*, 467 S.E.2d at 75-76. Respondent now argues this pronouncement was not a rejection of similarly-situated analysis. In so doing, respondent contends while the Fourth Circuit had a rule prior to *Miller El II* that "comparative juror analysis was not a critical element of a *Batson* claim" [DE 141 at 11, citing *United States v. Barnette*, 644 F.3d 192, 205 (4th Cir. 2011)], somehow the state supreme court's pronouncement in *Kandies* was not a similar bar. Contrary to respondent's argument, the state supreme court's dismissal of similarly-situated evidence was no different than that later acknowledged by the Fourth Circuit in *Barnette*. Indeed, in rejecting Kandies'

---

[1] Mr. Kandies acknowledges this Court intended the parties' supplemental briefs to be filed simultaneously and not as responsive pleadings. In this one regard, however, he believes it necessary to address an argument advanced by respondent.

5

*Batson* claim in 2004, the Fourth Circuit cited the same language from *Matthews v. Evatts*, 105 F.3d 907, 918 (4th Cir. 1997) it later rebuked in *Barnette*. *See Kandies*, 385 F.3d at 495 (Traxler, J., concurring opinion).

As to the extensive evidence of disparate treatment of similarly-situated jurors in Mr. Kandies' trial, all of which was exhaustively presented to the state courts in his direct appeal, and unreasonably rejected in light of existing federal law, *Pinholster* creates no bar to this Court's review. Indeed, *Miller-El II* supports the consideration of such evidence.

b.  *Evidence Developed through Racial Justice Act Litigation, Evidence from Randolph County Attorneys and Evidence of Criminal Records of Prospective Jurors*

In support of his *Batson* claim, Mr. Kandies has also offered extensive (1) evidence from the criminal records of various prospective jurors refuting the prosecutor's proffered race-neutral reasons, (2) evidence concerning the long-standing history of discrimination against black venire members in jury selection in Randolph County and (3) statistical evidence. With regard to the evidence of prospective jurors' criminal records, Mr. Kandies sought this information during his trial in state court. Despite it being in the hands of the prosecutor, otherwise he would have had no factual basis for his race-neutral reasons, the state courts refused to give the information to Mr. Kandies. Mr. Kandies only gained this

information after this Court ordered discovery. *Pinholster* did not consider this situation.

With regard to evidence about the prosecutor's long-standing history of discriminatory use of peremptory challenges, Mr. Kandies brought this notion to the attention of the trial court, which rejected it. It was also ignored on direct appeal. Mr. Kandies could not have added the additional information, including the affidavits of multiple local attorneys that have been lodged with this Court, to the record on appeal. *Pinholster* did not consider this situation.

Finally, the new statistical evidence developed pursuant to the Racial Justice Act, could not have been obtained by Mr. Kandies alone. It resulted from a comprehensive, exhaustive multi-year study. Mr. Kandies could not have pursued this statistical analysis on his own; no petitioner could do so. But this information is extremely relevant to his *Batson* claim. *Pinholster* did not consider this situation.

At the recent status conference, this Court mused about the impact of *Pinholster* on the continuing validity of discovery in habeas corpus proceedings.[2] *Pinholster* did not address the issue. But it is wholly unreasonable to interpret the bar in *Pinholster* to a federal court's consideration of facts not first presented to the

---

[2] Respondent has consistently tried to avoid this discovery. This position is hardly surprising since the discovery and the other information now available to Mr. Kandies strongly supports his *Batson* claim.

state court as meaning relevant evidence obtained by a petitioner in habeas discovery is of no help to him.

As set forth fully in Mr. Kandies' Motion to Stay and for Abeyance of Federal Proceedings [DE 138], abeyance is proper under the particular circumstances present in this case. *See Rhines v. Weber*, 544 U.S. 269, 278 (2005) (where good cause exists for failure to exhaust state remedies of potentially meritorious claims, federal court should stay rather than dismiss petition); *see, e.g., Gonzalez v. Wong*, 667 F.3d 965, 977-80 (2011) (remand directing district court to stay habeas proceeding pending state court consideration of new evidence); *Lovasz v. Vaughn*, 134 F.3d 146, 148 (3d Cir. 1998) (federal courts should not "discourage petitioners from exhausting all their claims in state court"); *see also Elmore v. Ozmint*, 661 F.3d 783, 845-49 (4th Cir. 2011) (circuit court grants stay and holds proceedings in abeyance to allow petitioner to exhaust his claim under *Atkins v. Virginia*, 536 U.S. 304 (2002) in state court). Mr. Kandies must be provided an opportunity to present the evidence to the state court since where, as here, there is a procedural mechanism to do so. This is especially true where the evidence gathered further supports finding that the prosecutor both (1) misrepresented the factual basis for his purported race-neutral reason for striking otherwise eligible African American prospective jurors and (2) actively violated the dictates of *Batson* and its progeny. *See Kandies v. Polk*, 385 F.3d 476, 478 (4th Cir. 2004)

8

(Gregory, J.) (expressing "serious doubts regarding the 'race neutral' reasons proffered by the State" and that these reasons "raise[d] suspicion").

Mr. Kandies sought an abeyance of federal proceedings at the earliest possible stage. When respondent first mentioned *Pinholster* as further grounds to sustain the Magistrate's recommendation denying habeas relief [DE 129], Mr. Kandies immediately requested a status conference. [DE 132] This Court then ordered the parties to appear at a status conference on 15 January 2013. Following the status conference, and this Court's order requesting supplemental briefing on *Pinholster*, Mr. Kandies filed his Motion to Stay and for Abeyance of Federal Proceedings.

As to this second body of evidence, Mr. Kandies again requests that, as he has done in his motion to stay and for abeyance, he be permitted to return to state courts to present this additional compelling evidence to the state courts for review. This Court cannot know if the state courts will deem Mr. Kandies procedurally barred from presenting this evidence and, even if it does so, if this bar is one regularly imposed. This speculative position advanced by respondent is not a legitimate ground to deny the motion to stay and for abeyance and is surely no basis to accept the pending Recommendation based on *Pinholster*.

9

c. *Evidence Developed as Part of Federal Discovery Procedures*

The final body of evidence Mr. Kandies has offered in support of his *Batson* claim was developed as a result of federal discovery allowed following remand. Discovery was deemed warranted on remand, in part, because while denying Mr. Kandies' *Batson* claim, the Fourth Circuit expressed reservations about the matter. *See Kandies v. Polk*, 385 F.3d at 478 (Gregory, J.) (expressing "serious doubts regarding the 'race neutral' reasons proffered by the State" and that these reasons "raise[d] suspicion"). On remand, former Magistrate Judge Eliason expressed his own concerns about the state court's handling of Mr. Kandies' *Batson* claim. He initially ordered discovery in this case, finding that "[p]art of the reason for discovery was that, in making a *Batson* comparison, Petitioner's trial attorney not only sought comparisons between black and white jurors but, in addition, attempted to obtain the criminal records which the State relied upon to explain its reasons for excusing the jurors. This potentially makes this case different than other *Batson* cases." [DE 88 at 1]

Later, in rejecting the respondent's repeated requests to deny or halt the previously-ordered discovery, Magistrate Judge Eliason noted "one of the problems in this case concerns the prosecution allegedly relying on a police officer[] to inform it whether individuals were good jurors or not. The Fourth Circuit had noted that the police would not be likely to help determine whether an

10

individual would be a good death penalty juror or not. … The trial judge in our case did nothing to clarify the situation ….." He found "the discovery problem seemingly remains in any event." [DE 88 at 2-3]

After conducting discovery on remand, both parties offered evidence for this Court's consideration. The depositions of three witnesses, District Attorney Garland Yates, Assistant District Attorney Andrew Gregson and law enforcement officer Mark McNeill, were lodged with this Court. Even the state sought to expand the record on multiple occasions. [DE 83, 95-96]

While respondent dismisses the unique posture of this case as being part of "one of many" cases remanded following *Miller-El II*, Mr. Kandies' case was actually one of only four cases remanded for further proceedings. While a number of lower court decisions have stated that, post-*Pinholster*, a petitioner is no longer entitled to obtain discovery in federal habeas proceedings, *Pinholster* itself did not address squarely the effect of its decision on requests for discovery in federal habeas proceedings. *Pinholster* did not reference to *Bracy v. Gramley*, 520 U.S. 899 (1997) (allowing discovery in federal habeas where a district court finds "good cause") or Rule 6 of the Rules Governing Section 2254 Cases in the United States District Courts ("A judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Civil Procedure and may limit the extent of

11

discovery."). Thus, *Pinholster*'s effect on evidence developed through federal discovery procedures is unresolved.

Here, the discovery conducted has provided Mr. Kandies with further substantial evidence, as the Fourth Circuit suspected might exist, that the prosecutor's reasons for striking a number of black prospective jurors, including Ms. Rawlinson and Mr. McClure, had no basis in fact. [DE 129 at 12-17] *Pinholster* neither resolved nor even envisioned this scenario. While the state court's determination of the *Batson* claim is entitled to some deference, and while *Pinholster* precludes this Court from considering evidence developed during a federal evidentiary hearing, this case involves a most serious issue: the unconstitutional use of peremptory challenges by a prosecutor in a capital trial. The issue was raised in and rejected on the merits by the state courts. The issue had sufficient merit to warrant remand by the Supreme Court. Now compelling information has emerged on this issue that Mr. Kandies could not have known about or obtained in state court. Nothing in *Pinholster* requires this Court to ignore this evidence, even if only by granting a stay to allow Mr. Kandies to present it to the state courts since a procedural mechanism exists for this review. *See* N.C. Gen. Stat. §15A-1419(a)-(b) (not requiring dismissal of second motion for appropriate relief where defendant not in position to raise issue based on new evidence).

WHEREFORE, Jeffrey Kandies requests that this Court decline to adopt the Memorandum and Recommendation based on *Pinholster*.

Respectfully submitted, this the 15th day of March, 2013.

/s/ M. Gordon Widenhouse, Jr.
M. Gordon Widenhouse, Jr.
N.C. Bar #10107
312 West Franklin Street
Chapel Hill, North Carolina 27516
Telephone: (919) 967-4900
Telefax: (919) 967-4953


/s/ Shelagh Rebecca Kenney
Shelagh Rebecca Kenney
N.C. Bar #28202
Center For Death Penalty Litigation
201 West Main Street, Suite 301
Durham, North Carolina 27701
Telephone: (919) 956-9545
Telefax: (919) 956-9547

# CERTIFICATE OF SERVICE

I hereby certify that on March 15, 2013, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following: Danielle Marquis Elder, Special Deputy Attorney General, at dmarquis@ncdoj.gov, and Mary Carla Hollis, Assistant Attorney General at, mchollis@ncdoj.gov.

Respectfully Submitted,

/s/ Shelagh Rebecca Kenney
Shelagh Rebecca Kenney
N.C. Bar #28202
Center for Death Penalty Litigation
201 West Main Street, Suite 301
Durham, North Carolina 27701
Telephone: (919) 956-9545
Telefax: (919) 956-9547