```
              IN THE UNITED STATES DISTRICT COURT
             FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
```

JEFFREY CLAYTON KANDIES,       )
                               )
          Petitioner,          )
                               )
     v.                        )        1:99CV764
                               )
CARLTON JOYNER,                )
Warden, Central Prison         )
Raleigh, North Carolina,       )
                               )
          Respondent.          )

**ORDER**

Petitioner Jeffrey Clayton Kandies, a prisoner of the State of North Carolina, has filed a Motion to Stay and for Abeyance of Federal Proceedings (Doc. 153) relating to his formerly filed Rule 59 Motion to Alter or Amend Judgment (Doc. 147). Petitioner seeks a stay pending the United States Supreme Court's review of Foster v. Humphrey, ____ U.S. ____, 135 S. Ct. 2349 (2015). Because Petitioner has failed to show that he is entitled to relief, the court denies the motion to stay.

**I.**

This court recounted the lengthy procedural history of this case in more detail in its Order dated November 6, 2014. Briefly, in 1994 Petitioner was convicted of and sentenced to death for the rape and murder of Natalie Lynn Osborne, the four-year-old daughter of his fiancée. After his direct appeal and

state post-conviction efforts failed, he filed a petition for a writ of habeas corpus in this court on October 7, 1999. The United States Court of Appeals for the Fourth Circuit affirmed this court's original order denying the petition on September 24, 2004, but the United States Supreme Court granted certiorari and remanded the case to the Fourth Circuit for reconsideration in light of Miller-El v. Dretke, 545 U.S. 231 (2005) ("Miller-El II"). See Kandies v. Polk, 545 U.S. 1137 (2005). With the case remanded to this court for consideration of Petitioner's claims pursuant to Batson v. Kentucky, 476 U.S. 79 (1986), in light of Miller-El II, and without the benefit of the Supreme Court's ruling in Cullen v. Pinholster, 563 U.S. 170 (2011), the court allowed limited discovery regarding jury selection at Petitioner's trial. After reviewing the new evidence introduced by Petitioner, the Magistrate Judge recommended denial of the petition. (See Mem. Op. & Recommendation (Doc. 124).) Bound by the rule announced in Pinholster that, in considering a claim rejected on the merits by a state court, a federal habeas court may only consider the evidence included in the state court record, this court adopted the Magistrate Judge's recommendation in part and denied the petition. (See Order (Doc. 147); Judgment (Doc. 148).)

On June 17, 2015, Petitioner filed the present motion to stay and abey. (Mot. to Stay (Doc. 153).) In his motion, Petitioner claims that this court would benefit from the United States Supreme Court's consideration of Foster v. Humphrey, scheduled for oral argument in November 2015. (Id. at 4.) Petitioner claims that the Supreme Court will likely present a clearer analysis of what is required in the third stage of the Batson analysis, the proving of purposeful discrimination by a prosecuting attorney during jury selection. (Id.) Petitioner argues that the Court's potential ruling will have a direct impact on the manner in which this court will review his motion to alter or amend its judgment. (Id.)

**II.**

A determination of whether to stay a habeas case rests in the district court's sound discretion. Rhines v. Weber, 544 U.S. 269, 276 (2005) (addressing "mixed petitions" in which exhausted and unexhausted petition claims are presented to the habeas court). However, the discretion should be judiciously exercised because granting the motion would conflict with one of the underlying purposes of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which is to "reduce delays in the execution of state and federal criminal sentences, particularly in capital cases." Woodford v. Garceau,

538 U.S. 202, 206 (2003). Likely for this reason, the Supreme Court also held that stays "should be available only in limited circumstances." Rhines, 544 U.S. at 277.

Petitioner has not shown good cause for this court to exercise its discretion to stay consideration of his Rule 59 motion until the Supreme Court rules in Foster. It is unlikely that any analysis in Foster will apply to Petitioner's case because the facts in Foster are wholly distinguishable from the facts in Petitioner's case; Foster's case is in a different procedural posture than Petitioner's; and the Supreme Court therefore is highly unlikely to make any new decisional law in Foster explicitly retroactive to cases on federal habeas review.

Petitioner argues that the outcome of Foster's case "will likely have some bearing on [his] Batson claim," (Mot. to Stay (Doc. 153) at 4), but, as he points out, the question presented in Foster relies on the "extraordinary circumstances" of Foster's particular case. Brief of Petitioner at *i, Foster v. Chatman, ____ U.S. ____, 135 S. Ct. 2349 (2015) (No 14-8349)

2015 WL 4550211.[1]  Although the cases share a Batson claim, the facts supporting the claims of Petitioner and Foster are easily distinguishable.  In Foster, a case from 1986, the prosecution, trying a case with a black defendant and a white victim, struck all prospective black jurors from the jury pool. Id.  The prosecution's jury selection notes revealed that the prosecutor identified all black prospective jurors with a "B" next to their names and highlighted each of them in green on four copies of the venire list. Id. at *14.  If a juror self-identified as black on the jury questionnaire, the prosecutor circled that fact and did not circle the race of any of the other prospective jurors. Id. at *16.  The prosecutor also ranked prospective black jurors on a strike list as "B#1," "B#2," et cetera, and put all of them as the first names in a "Definite NOs" list.

---

[1] In the Georgia Supreme Court, this case was referred to as Timothy Tyrone Foster v. Carl Humphrey, Warden. Petitioner Foster referred to the case the same way in his petition for certiorari in this Court. In its brief in opposition to certiorari, Georgia lists Bruce Chatman, Warden, as the respondent because Chatman has replaced Carl Humphrey as the warden of the Georgia Diagnostic and Classification Prison. See Sup. Ct. R. 35(3) (providing for substitution of parties in these circumstances). Foster does the same in this reply.

Reply to Georgia's Opp'n to Pet. for Writ of Certiorari at *1 n.1, Foster v. Chatman, 135 S. Ct. 2349 (2015) (No. 14-8349), 2015 WL 2457659.

Id. at *16-18.  Additionally, in his closing argument, the prosecutor asked the jury to impose the death penalty to "deter other people out there in the projects."  Id. at *11.

Given the specificity of the facts underlying Foster's Batson claim, any decision the Supreme Court makes regarding that claim will be highly fact-specific.  The facts supporting Petitioner's claim are not analogous: the prosecutor did not strike every potential black juror, and Petitioner has not shown any evidence that the prosecutor, in preparation for jury selection, specifically identified black jurors with plans to strike them.  Petitioner has thus made no showing that the prosecutor in his case systematically targeted black prospective jurors for elimination from the jury pool in the way that Foster alleges was done in his case. And there was no argument in support of the death penalty allegedly tied to the race of the defendant, as there was in Foster's case.  This court has already rejected Petitioner's claims under Miller-El II, that the prosecutor used a disparate questioning technique to prompt objectionable answers from black jurors and that a comparison of similarly situated jurors would reveal discriminatory intent. It is unlikely that a ruling in Foster would lead the court to reconsider its conclusion that the state post-conviction court

unreasonably applied Batson when it rejected Petitioner's claims, as required for habeas relief under AEDPA.

Second, while Petitioner seeks relief from a judgment made under the stringent federal habeas corpus standard of review promulgated by AEDPA, the Supreme Court is reviewing Foster's case on certiorari after state post-conviction proceedings. Such review is not subject to AEDPA standards. Furthermore, Petitioner is seeking an alteration of an order already entered by this court, which may only alter or amend its judgment "to accommodate an intervening change in controlling law," "to account for new evidence not available at trial," or "to correct a clear error of law or prevent manifest injustice." Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co., 148 F.3d 396, 403 (4th Cir. 1998). Petitioner anticipates that Foster will provide a new interpretation of Batson favorable to his case, but, given the procedural posture, it is highly unlikely that the Supreme Court will make any potential change in the law regarding the third prong of Batson expressly retroactive to cases on federal habeas review. See Tyler v. Cain, 533 U.S. 656, 663 (2001) (holding that "a new rule is not 'made retroactive to cases on collateral review' unless the Supreme Court holds it to be retroactive") (quoting 28 U.S.C. § 2244(b)(2)(A)). This court sees no reason

to delay these proceedings in anticipation of a ruling that very likely will not apply to Petitioner's case.

**III.**

For the foregoing reasons, **IT IS ORDERED** that Petitioner's Motion to Stay and for Abeyance of Federal Proceedings (Doc. 153) is **DENIED**.

This the 25th day of September, 2015.

/s/ William L. Osteen, Jr.
_____
United States District Judge